Jimmy Ray BONDS, Petitioner-Appellant,

v.

Louis L. WAINWRIGHT, Director, Division of Corrections, Respondent-Appellee.

No. 75–3914.

United States Court of Appeals, Fifth Circuit.

Dec. 16, 1977.

Rehearing En Banc Granted Feb. 13, 1978.

---

1126

Thomas A. Gribbin, Miami, Fla., for petitioner-appellant.

Robert L. Shevin, Atty. Gen., J. Robert Olian, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before BROWN, Chief Judge, TUTTLE and TJOFLAT, Circuit Judges.

TUTTLE, Circuit Judge:

In 1953, a jury in Florida state court found Jimmy Ray Bonds guilty of rape. He was sentenced to thirty years imprisonment, which he did not appeal. In 1974, however, Bonds challenged his conviction by seeking a writ of habeas corpus, first, unsuccessfully from Florida, and then in the federal courts.[1] The district court denied relief. In his appeal, Bonds challenges the lower court's decision in only one respect: he asserts that his trial counsel failed to render him constitutionally effective assistance in connection with the decision whether or not to pursue a direct appeal of his conviction.

The State of Florida was unable to provide any transcript of Bonds' trial or sentencing. In any case, a transcript would not be likely to reveal whether Bonds' counsel did or did not adequately advise and consult with him about the possibility of appeal. The lower court, however, conducted an evidentiary hearing, at which Bonds and his trial attorneys, Murray Klein and Harry Durant, testified. The findings of the lower court bespeak its effort to identify the facts of a case which did not readily fit within more common categories of effective or ineffective assistance. We therefore will set out the relevant findings at some length.

The lower court found that Bonds "did not affirmatively consent to forego an appeal, nor did he press for an appeal." Rather, Bonds, then sixteen years of age, "left that decision to Klein;" he "reposed his confidence in his lawyer to make the right decision." "Klein, in consultation with Durant, exercised that judgment for" him. Though the opinion below does not expressly so find, its conclusion that Bonds relied on his lawyer may well imply that Bonds was at least aware that some sort of appeal option existed. At one point, the court indicated that "[t]here is a strong suggestion . . . that the motivating factor which caused Bonds not to take an appeal was the fact that Bonds had received a thirty year sentence in a capital case where the facts were harsh facts indeed." By this the court may have meant that Bonds' reliance on his lawyers seemed to be accompanied by, or to stem from, his awareness of his jeopardy. But the court did not find this as a fact. (It is also possible that the court meant only that Bonds' counsel took into account the risks he ran if he appealed, rather than that Bonds himself did.) In some respects, at least, the court did believe that Bonds' understanding of his plight was limited for it twice commented that Bonds "was not familiar with his appellate rights." Bonds had testified that he "remember[ed]

---

1. The state recognized, in a memorandum of law filed below, that Bonds' state habeas petition raised substantially the same grounds as his federal court petition. In this court, similarly, the state at no time urges that exhaustion considerations mandate a remand of the entire case. The state does object on exhaustion grounds to Bonds' reliance on *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), but Bonds did cite the case in the state petition, and for substantially the same point. Other exhaustion issues have been raised by the state.

shortly after the conviction Mr. Klein saying something to the effect he thought there were errors which would warrant a new trial, and I think he was even talking to Mr. Durant other [sic] than me . . ." The court concluded that Bonds' lawyers had, in his presence, given some consideration to the possibility of appeal, but it also specifically referred to his lack of familiarity with his rights at that time. The court also observed that "there was at least some discussion relating to the possibility of appeal."

Before we can evaluate the merits of Bonds' position, we must consider whether the lower court's view of the facts is correct. Although neither party to this appeal explicitly attacks the findings below, the state's brief outlines a seemingly different picture of the events of the case. It argues that appellant failed to sustain his burden of proof, and that "the evidence strongly supports . . . conclusions . . . (1) that the appellant was apprised of the right to appeal and (2) that the appellant agreed to forego that appeal in view of the risks involved." To be sure, the state does not assert that Bonds' lawyers acquainted him with the procedural requisites for prosecuting an appeal; in this sense, the state does not depart from the court's view that Bonds "was not familiar with his appellate rights." But the state argues that Bonds evaluated the risks and as a result agreed not to pursue an appeal. The court may have believed that Bonds was cognizant of the risks, and that he was aware in some sense of the possibility of appeal. Even if Bonds took these factors into account in choosing to rely on his lawyers' judgment, the court clearly found that Bonds "did not affirmatively consent to forego an appeal" but rather relied on his lawyers, who "exercised that judgment *for* him." (Emphasis ours.)

We, of course, are bound by the lower court's findings of fact unless these are clearly erroneous. These are not. Only

Bonds claimed to have any distinct memory of the events in question. He testified that he was never advised of his appellate rights, and understood nothing about the taking of an appeal, and that he felt his lawyer would have pursued an appeal if the lawyer had felt it would help. Moreover, the thrust of Bonds' testimony was contradicted by both of his lawyers. They testified that as a matter of custom they would have discussed the appeal decision with their client, though neither had any distinct memory of whether or not they had done so. The state also mounted a direct attack on Bonds' credibility. Emphasizing Bonds' long delay before seeking relief, the state suggested that the impulse for his present effort was not new knowledge of his legal rights, but hope that the transcript of his trial would have disappeared—as it had—and that relief would therefore be more likely. While the state's portrayal of Bonds is not implausible, it is also not entirely compelling. Judge Eaton, of course, heard Bonds' testimony, as we did not. Perhaps guided by his own knowledge of 1950s Florida criminal procedure, to which he referred briefly at the hearing.[2] the lower court did not have to believe Bonds' somewhat inconsistent testimony entirely (or at all)—but it could reasonably have accepted that at least a central point was true—that Bonds had not actually taken part in the decision on whether or not to take an appeal.

■ Taking these facts as established, we must now decide whether they show a violation of Bonds' right to counsel. Our starting point is the observation that no such violation can have occurred unless Bonds had a right to effective assistance of counsel on appeal in 1953, when these events transpired. It is established that the indigent defendant's right to appointed counsel at trial, and on appeal is retroactive, *See, e.g., Stovall v. Denno,* 388 U.S. 293, 297–98, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Smith v. Crouse,* 378 U.S. 584, 84

**2.** He commented then that, "This idea of explaining appellate rights at the time of sentencing has come into the law long after this situation . . . .. The lawyer was just more or

less to decide whether or not he wanted to take an appeal . . . and so courts did not go around seeing if somebody had all his appellate rights." (R. 54–55).

S.Ct. 1929, 12 L.Ed.2d 1039 (1964) (per curiam). Conceding as much, one might still argue that the particular elements which this Circuit has come to view as essential to effective assistance on appeal should not carry retroactive force. Instead, once a court ascertained that a defendant had had counsel physically present, it would evaluate counsel's effectiveness according to the norms of representation prevailing at the time of counsel's actions. *Cf. United States ex rel. Williams v. Pennsylvania,* 378 F.Supp. 1295, 1297 (E.D.Pa.1974). *See generally Burston v. Caldwell,* 506 F.2d 24, 27 (5th Cir.), *cert. denied* 421 U.S. 990, 95 S.Ct. 1995, 44 L.Ed.2d 480 (1975). We need not decide, however, whether our modern descriptions of the nature of effective assistance diverge significantly from those which governed in 1953, for a panel of this Court has already declared in broad terms that the present criteria for effective assistance do apply retroactively, *Bailey v. Ault,* 490 F.2d 71, 72–73 (5th Cir. 1974) (per curiam); *see Byrd v. Smith,* 407 F.2d 363, 365 n. 2 (5th Cir. 1969). *Compare Shiflett v. Virginia,* 447 F.2d 50 (4th Cir. 1971) (*en banc*), *cert. denied* 405 U.S. 994, 92 S.Ct. 1267, 31 L.Ed.2d 462 (1972) (rejecting retroactive application of duty of attorneys to advise defendants of their appellate rights).

Even when a rule of law has retroactive effect, however, its application may not be automatic. The court's capacity to evaluate past conduct in terms of present rules is stretched to the utmost when, as here, a transcript of the original events can be no longer provided and the participants' memories have also faded. In one of its first efforts to cushion the retroactive impact of newly-declared constitutional protections, the Supreme Court put considerable emphasis on the unavailability—through no fault of the state—of a trial transcript. The case was *Norvell v. Illinois,* 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456 (1963). The issue arose out of the response of the State of Illinois to the Supreme Court's decision in *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) which reasoned that the state must provide to an indigent defendant a right of appeal comparable to that enjoyed by the more wealthy, and therefore proscribed the flat denial of a free transcript if that denial stymied an indigent's appeal. Illinois had thereupon provided by rule that indigent defendants, convicted both before and after *Griffin,* could receive a free trial transcript, unless the transcript could no longer be produced. In Norvell's case, no transcript of his 1941 trial existed, and an attempt to reconstruct the record through the testimony of persons who attended the trial was largely unavailing. The Illinois courts declined to afford him a new trial.

The Supreme Court affirmed. Writing for the Court, Justice Douglas emphasized that Norvell was represented by counsel at trial and presumably had his continuing services for purposes of appeal, yet failed to pursue an appeal. In the face of the impossibility of ascertaining what errors, if any, were made at Norvell's trial, the Court decided to sanction a presumption that his lawyer could have protected his rights on appeal, if (the court implied) legal (and tactical) reasons for an appeal had existed.

The lower court felt that the rationale of *Norvell* was applicable to Bonds' case. Indeed, the court indicated that Bonds' position was less compelling than Norvell's. The Supreme Court had had to rely on a presumption that Norvell had available the services of a lawyer for appeal. No such presumption, the court stated, was needed as to Bonds, for "[w]e know from the testimony that Bonds had a lawyer and that the lawyer did not refuse to represent Bonds on appeal." The force of this distinction is questionable. If, indeed, Bonds was denied the effective assistance of counsel on appeal, then his ability to exercise his appellate rights could have been jeopardized. It is true that the *Norvell* court itself identified only a refusal by trial counsel to take an indigent's appeal as posing a "different case." 373 U.S. at 422–23, 83 S.Ct. 1366. But the presumption of the availability of counsel's services seems effectively undermined by constitutionally inadequate (albeit available) service as well. *Cf. Stokes v. Peyton,* 437 F.2d 131, 135–36 (4th Cir. 1970).

■ A more fundamental objection to application of *Norvell* to the present case is that *Norvell* represents an *ad hoc* approach to problems of retroactivity, which the Supreme Court has not ordinarily utilized since. In effect, *Norvell* decides that *Griffin v. Illinois* is not retroactive if the state is, without fault, unable to provide a transcript of the trial. This, loosely, is an example where complete retroactivity would have a burdensome impact on the administration of justice. Such burdensome impact is obviously cause for concern and, in subsequent retroactivity cases, the Supreme Court has viewed this danger as one of the critical factors for decision. *See Adams v. Illinois,* 405 U.S. 278, 284, 92 S.Ct. 916, 31 L.Ed.2d 202 (1972); *Stovall v. Denno,* 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967). But these cases generally evaluate the impact on the administration of justice, as well as other factors, as they will be felt over the full range of potential litigation. The resultant decision holds a rule retroactive or prospective, but not "both at different times." Moreover, a major theme of the decisions which have given rules retroactive effect has been the impact of the rule in question on the integrity of the factfinding process. *See Williams v. United States,* 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). The *Williams* court comments that a "severe impact on the administration of justice has [not] sufficed to require prospective application" in such instances. *Id.* Though less directly related to the assurance of accuracy than the presence of a lawyer at trial, the assistance of counsel on appeal has been seen as implicating the same concerns. *See Stovall v. Denno, supra,* 388 U.S. at 297–98, 87 S.Ct. 1967. Hence we conclude that the absence of a transcript of Bonds' trial does not prevent us from addressing his claims. We are confirmed in this conclusion by the past cases which have, admittedly without addressing *Norvell,* entertained petitions for relief despite the unavailability of a transcript. *See Edge v. Wainwright,* 347 F.2d 190 (5th Cir. 1965); *cf. Collier v. Estelle,* 488 F.2d 929, 933 (5th Cir. 1974).

■ Bonds' lawyers were not originally appointed by the state. We measure their conduct as if they were court-appointed, however, because after trial they sought, and received, court appointment and payment from the state. *See Goforth v. Dutton,* 409 F.2d 651, 653 (5th Cir. 1969). We turn, therefore, to the several cases in this Circuit which have followed the proposition that a court-appointed lawyer must inform his client of his appellate rights. *See Daniels v. Alabama,* 487 F.2d 887 (5th Cir. 1973), (*per curiam*); *Lumpkin v. Smith,* 439 F.2d 1084 (5th Cir. 1971). *Cf. Thomas v. Beto,* 423 F.2d 642 (5th Cir. 1970) (per curiam). *But cf. Collier v. Estelle,* 488 F.2d 929, 932 (5th Cir. 1974) (testing waiver of appeal by standards for waiver of counsel, the court noted the absence of indication that the defendant "suggested, acquiesced in, or concurred with decision to dismiss appeal.") *See also Giles v. Beto,* 437 F.2d 192 (5th Cir. 1971) (per curiam) (guilty plea). Perhaps the most apposite precedent is an earlier case, *Wainwright v. Simpson,* 360 F.2d 307 (5th Cir. 1966). There the defendant's lawyer, perhaps because of the threat of a death penalty on retrial, failed both to prosecute an appeal and to advise his client of the grounds for appeal and the relevant procedural time limits. The court concluded that, however laudable his motive, counsel had no right to deliberately forego his client's post-trial remedies without consulting with him or obtaining his consent.

The court below recognized, though it did not entirely spell out, the relevance of *Wainwright v. Simpson* to Bonds' claim, and indeed implied that, were it not distinguishable (on grounds we shall consider *infra*), *Simpson* would be dispositive. Bonds' counsel, like Simpson's decided not to appeal without obtaining the client's consent. The lower court did not make a finding that Bonds' counsel had consulted with him either (though the court may well have felt that Bonds had some awareness of the nature of the choice he faced). One basis on which the lower court distinguished *Simpson* was its finding that "there is evidence . . . that some consultation was had regarding appeal in the presence of Bonds."

The court does not state, but perhaps we may speculate, that this consultation could have been in part directed to Bonds' ears or open to his participation. *Wainwright v. Simpson* does not define what degree of consultation with his client counsel must engage in, but we recognize that some minimum level of consultation must be afforded.

Here, the district court concluded that Bonds was not familiar with his appellate rights, and had left the appeal decision to Klein, in whom he was reposing his confidence. The court described the decision as being made by "Klein, in consultation with Durant." Bonds "did not affirmatively consent to forego an appeal, nor did he press for an appeal." We take the implication of these findings to be that little, if any, genuine consultation took place in Bonds' case. Moreover, Bonds' lack of familiarity with his appellate rights—though the court does not spell out the extent of this ignorance—may well reflect a violation of the rule of such cases as *Daniels, supra,* and *Lumpkin, supra,* that the lawyer must inform his client of these rights. We therefore hold that Bonds did not receive the effective assistance of counsel.

The lower court also sought to distinguish *Wainwright v. Simpson* on the ground that Simpson's counsel believed meritorious grounds for an appeal were present. In Bonds' case, it declared, "[t]here is no showing . . . that Bonds' court-appointed counsel considered that meritorious grounds were present." Bonds did testify that one of his lawyers had said "something to the effect he thought there were errors which would warrant a new trial." Bonds himself remembered the introduction, over objection, of unsigned confessions. One of Bonds' attorneys remembered that he felt it unfair that Bonds was convicted while the same trial ended in mistrial for a codefendant. The court did appear to accord some weight to Bonds' memory of his attorney's comment. Nevertheless, the court was not bound to conclude that Bonds had established his attorneys' belief that there were meritorious grounds for an appeal.

What is more debatable is the legal significance of this finding. *Wainwright v. Simpson,* after all, refused to approve an attorney's unilateral decision that an appeal was not in his client's best interests. The thrust of this decision ought equally to reach unilateral decisions that no meritorious ground for appeal exists. *See generally Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Moreover, this Court has declined to require that a state prisoner, seeking habeas corpus relief because of a denial of effective counsel, make a showing of some chance of success on appeal. *Lumpkin v. Smith,* 439 F.2d 1084, 1085, (5th Cir. 1971). *Cf. Rodriquez v. United States,* 395 U.S. 327, 329–30, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969); *Nelson v. Peyton,* 415 F.2d 1154, 1159 (4th Cir. 1969), *cert. denied,* 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970). *But cf., e.g., Hooks v. Roberts,* 480 F.2d 1196 (5th Cir. 1973), *cert. denied,* 414 U.S. 1163, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974) (claim of failure of counsel to raise various points on appeal denied since points without sufficient merit to warrant pressing). Though analytically distinct, a requirement that petitioners show that their counsel thought there were meritorious grounds would reflect less solicitude for such claims than the result in *Lumpkin* manifests.

The lower court, however, felt that another difference between Bonds' case and Simpson's was the most important. The court emphasized that Bonds had "left the decision of whether or not to appeal to his lawyer . . . ." That Bonds relied on his lawyer might mean that he waived his right to advice and consultation more ample than what he received. It is clear that the right to counsel can be waived altogether. Presumably the right to *effective* assistance of counsel can also ordinarily be waived. While we might hesitate to give effect to a waiver that purported to permit counsel to fail to prepare a defense, a waiver of effective assistance on appeal is far less drastic. Bonds' reliance on his attorneys did not free them of the duty to diligently protect him, but only increased

**1132**

their responsibility. It seems reasonable to permit a defendant to decide that he would play no fruitful role in a decision whether or not to appeal. *Cf. Bennett v. Mississippi,* 523 F.2d 802 (5th Cir. 1975) (implicitly recognizing possibility of waiver of right to counsel on appeal); *United States v. Garcia,* 517 F.2d 272 (5th Cir. 1975) (waiver of right to conflict-free representation permitted).

██ But such waiver should be no more readily found by the courts than any other waiver of the right to counsel. Hence waiver must be an intelligent, under-standing, and voluntary decision. A valid waiver of the right to effective assistance of counsel therefore would have to be pre-ceded by an explanation to the client of what he was waiving. This explanation should make clear to the client the signifi-cance of what he is waiving and the risks he runs. *See generally United States v. Gar-cia,* 517 F.2d 272, 277–78 (5th Cir. 1975) (directing trial court to "carefully evaluate" waiver of right to conflict-free representa-tion, by using procedure akin to that pro-vided in guilty plea proceedings by F.R. Cr.P. 11.)

Although the district court spoke of re-liance rather than waiver, its evaluation of Bonds' claims throws considerable light on the waiver question as we have formulated it. The testimony of Bonds' lawyers was that they could not remember how they had handled Bonds' case but that by custom they would have put the appeal decision to him. Only Bonds' testimony—supplement-ed, perhaps, by Judge Eaton's own aware-ness of standard practices of that day—sup-ported his claim of ineffective assistance. Thus the court's response may well reflect an evaluation of Bonds' veracity. That re-sponse did not go as far as to find a viola-tion of *Wainwright v. Simpson,* but many of the court's findings pointed in that di-rection. Even the court's conclusion that Bonds had relied on his lawyers did not require total disbelief of Bonds, for at one point on the stand, he had said as much.

The court made no findings concerning the extent to which Bonds had or had not been so carefully advised of his right to effective assistance that he could validly waive it. Bonds himself, however, testified that he "didn't know anything about an appeal," that his lawyer "didn't mention anything about an appeal at any time." If this testimony is credible, then it would be difficult indeed to find a valid waiver.[3] We understand the district court to have con-cluded that Bonds' testimony contained at least some truth. We also understand its sense of the events surrounding the appeal decision as this: that Bonds' attorneys were undoubtedly solicitous of Bonds' interests, but were acting relatively independently. We recall as well, the court's intimation that lawyers of that day tended to make the appeal decision unilaterally. We con-clude that the likelihood is that in 1953 even these attorneys, solicitous of their youthful, no doubt distraught, client's interests, did not counsel him in a way that can now support a finding of a knowing waiver.

Our decision in this case has been closely guided by the district court's delicate evalu-ation of these long-forgotten facts. Never-theless, we do differ with the district court on the law, and conclude that Bonds has demonstrated that he received constitution-ally ineffective assistance of counsel. He is therefore entitled to release, unless the state chooses to retry him within a time certain.

REVERSED.

TJOFLAT, Circuit Judge (dissenting):

From the majority's opinion I distill this bottom-line result: in every state criminal prosecution in the Fifth Circuit in which the defendant is represented by court-ap-pointed counsel, the state must, upon judg-ment of conviction, cause an appeal to be taken unless the defendant waives his right

**3.** The evidentiary hearing did not bring out whether Bonds might at some point have told his attorneys in broad terms that he could not take any meaningful role in the legal decisions to be made. Even if he did, however, we would be hesitant to accept the effectiveness of such a general waiver, forswearing a role in a decision whose parameters were as yet invisible. *See Bennett v. Mississippi,* 523 F.2d 802, 804 (5th Cir. 1975).

to an appeal. Today's decision is retroactive. Thus, the habeas corpus pathway is now open to anyone in state custody (for whom the state provided trial counsel) to seek a permanent release from custody[1] on the ground that he has never made an "intelligent, understanding and voluntary" waiver of his right to a direct appeal from his conviction. Moreover, since the majority has ostensibly grounded its holding on the sixth amendment right to the effective assistance of counsel,[2] our decision necessarily applies, retroactively, to federal prosecutions where the accused was provided court-appointed counsel.

In my view, the proposition that one cannot be held to have foregone the right to appeal unless he makes an "intelligent, understanding and voluntary" waiver of the right is not one which logically stems from the sixth amendment right to the effective assistance of counsel. Rather, the notion that a convicted defendant cannot be deemed to have relinquished his right to an appeal absent such a waiver seems to be rooted in fifth and fourteenth amendment due process considerations. It is to satisfy due process, for example, that we have ordained the practice of advising the defendant at the time of sentencing of his appeal rights, and we have held that, once advised, the burden of preserving the right to appeal shifts to the defendant.[3] This practice of

---

1. Of course, not every habeas petitioner who cannot be shown to have waived his right to appeal will obtain outright release. In cases where a record of the original trial proceedings is still available, the appropriate relief would be to grant an out-of-time appeal. Where no adequate record for appeal is available, the appropriate relief would be the grant of a new trial. *See, e. g., Horsley v. Simpson*, 400 F.2d 708 (5th Cir. 1968); *Beto v. Martin*, 396 F.2d 432 (5th Cir. 1968). But in cases as old as this one, where the prosecution could not mount an effective attack on retrial, the *de facto* result is the outright release of the petitioner.

2. The majority does not expressly allude to any particular constitutional provision as underpinning its rationale. Rather, it centers its analysis on a defendant's "constitutional right" to counsel in criminal proceedings. Obviously, the underlying federal constitutional provision is the sixth amendment. The sixth amendment provides in pertinent part, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S.Const. amend. VI. Of course, the right to effective assistance of counsel exists in state proceedings through the application of the fourteenth amendment.

3. In state court proceedings it is well settled that the convicted, indigent defendant must initiate the appeal process. That is to say that, as long as appointed counsel or the court advises him of his right to appeal and to do so in forma pauperis, the defendant must direct a responsible state official (such as his appointed counsel) to begin the appellate process. *See, e. g. Collier v. Estelle*, 488 F.2d 929 (5th Cir. 1974); *Worts v. Dutton*, 395 F.2d 341 (5th Cir. 1968). Because it is the defendant's obligation to initiate an appeal, fairness requires that a defendant represented by state-appointed counsel be informed of his right to request an appeal. If

an indigent defendant is not so advised, his failure to request an appeal is excused on the theory that the state, through its appointed counsel, constructively denied the defendant his appeal. *E. g., Lumpkin v. Smith*, 439 F.2d 1084 (5th Cir. 1971); *Nelson v. Peyton*, 415 F.2d 1154 (4th Cir. 1969), *cert. denied*, 397 U.S. 1007, 90 S.Ct. 1235, 25 L.Ed.2d 420 (1970).

Under Rule 32(a)(2), Fed.R.Crim.P., a federal sentencing judge must advise a defendant of his right to an appeal and, in indigent cases, of his right to do so in forma pauperis. The rule provides as follows:

> After imposing sentence in a case which has gone to trial on a plea of not guilty, the court shall advise the defendant of his right to appeal and of the right of a person who is unable to pay the cost of an appeal to apply for leave to appeal in forma pauperis. There shall be no duty on the court to advise the defendant of any right of appeal after sentence is imposed following a plea of guilty or nolo contendere. If the defendant so requests, the clerk of the court shall prepare and file forthwith a notice of appeal on behalf of the defendant.

This provision does not even hint at the proposition that the court need do anything more than simply advise the defendant that he has a right to an appeal. Rule 32 cannot possibly be taken to suggest that an appeal cannot be foregone absent the type of waiver the majority advances. Often, the defendant does not have appellate counsel at his sentencing. (In fact, the history of the rule indicates that it was originally promulgated for the benefit of counsel-less defendants only.) Consequently, there are many situations where the defendant cannot adequately be informed of his chances for reversal on appeal and acquittal on retrial. Yet, once a federal defendant is advised that he has a right to appeal and that he has ten days to do so, his failure to appeal is fatal. As long as a defendant bears the duty of requesting an

giving the defendant timely notice of his right is designed, I submit, to protect the defendant's statutory right to appeal and thus satisfies due process. I do not think that fundamental fairness requires that the state accord a defendant the additional procedural safeguard fashioned by the majority, whereby he is permitted to maintain the appeal right indefinitely unless he waives it within the statutory time for commencing an appeal. To me, the idea that a defendant might be able to manipulate his release by withholding his claim to an appeal until an appeal or retrial is no longer possible is repugnant to common sense notions of justice.[4]

In the case before us, the petitioner was advised at the time he was sentenced of his right to perfect a direct appeal from his conviction. Under our prior decisions, which have heretofore remained undisturbed,[5] it was petitioner's responsibility, having been informed of his right to appeal, to initiate the appellate process by requesting his counsel, the prosecutor, or the court

to perfect an appeal. Had petitioner stood mute, he would, in my opinion, have foregone his right to an appeal once the time for commencing it had lapsed. I suggest that the only way he could have avoided the consequences of having failed to request an appeal would have been to demonstrate that his failure was caused by the ineffective assistance of his counsel, i. e., that his counsel was *in fact* incompetent.

Petitioner did not take steps to initiate an appeal by deferring the decision whether to appeal to his lawyers; it was as if he had stood mute. Consequently, the only way that he could avoid the binding effect of his conviction was to challenge the competency of his counsel's performance, which is precisely what he did. As the majority acknowledges, the district court found that, under the circumstances and especially with the threat of a death sentence on retrial (the rape for which he was charged was an aggravated one), petitioner's counsel fully measured up to the performance expected of criminal lawyers of the day.[6] I submit

appeal, I feel his right to an appeal is adequately safeguarded by the requirement that he be made aware of this right.

4. The possibility that such a strategem may be entertained is not remote. At the habeas hearing below, the state introduced as an exhibit a letter from petitioner to his trial counsel apparently written some twenty years after his conviction. In that letter, he advised counsel that he had successfully overturned a subsequent sentence imposed on him following an escape conviction. He added in that letter that in prison he learned that

inmates here who were convicted in Dade Co. in the 50's and discovered that in almost every case that has "lately" been contested there were no "minutes" of the court proceedings available. They all seem to have disappeared or gotten lost during the transfer from the old courthouse to the new.

The clear import of this letter to counsel is that the petitioner, having already served the greater part of his sentence and having lost parole options due to further misconduct, was looking for an easy way out. There is no criticism in the letter of counsel's decision not to appeal the original conviction. I refer to this letter only for the thought that it is not inconceivable that a defendant adopt a strategy which subsumes the loss of state records. Such a strategy is rewarded when, as the majority suggests, the state bears the burden of proof in claims such as the instant one.

5. The majority, rather than distinguishing apposite cases, e. g., *Worts v. Dutton*, 395 F.2d 341 (5th Cir. 1968), simply relies on *Wainwright v. Simpson*, 360 F.2d 307 (5th Cir. 1966); *Thomas v. Beto*, 423 F.2d 642 (5th Cir. 1970); *Lumpkin v. Smith*, 439 F.2d 1084 (5th Cir. 1971); and *Daniels v. Alabama*, 487 F.2d 887 (5th Cir. 1973), and unjustifiably stretches them, I submit, to suggest that counsel must always exact a full waiver from a defendant of his right to appeal as a pre-condition to foregoing an appeal. These cases, however, do not even come close to suggesting such an expansive protection of the right to appeal. They do no more than reiterate the requirement that counsel advise his client of the fact that an appeal may be taken.

6. In discussing the practice of counsel in advising a defendant of his appellate rights, the district court found that, at the time of petitioner's conviction,

[t]his idea of explaining appellate rights at the time of sentencing has come into the law long after this situation. . . .
. . . The lawyer was just more or less to decide whether or not he wanted to take an appeal . . . , and so courts did not go around seeing if somebody had all his appellate rights. (R. at 54–55.)

Counsel's testimony at the hearing below demonstrated that their practice, to discuss the

that, under the present case law, the petition was properly dismissed as petitioner clearly failed to sustain the burden of establishing ineffective assistance of counsel.

It seems to me that the majority's conclusion that counsel was "incompetent" is not only a rank display of appellate speculative fact-finding (as, I submit, is self-evident from majority opinion), but also is nothing more than a legal fiction designed to mask a new due process device for the avowed protection of a defendant's right to appeal.[7] The "waiver" device is to ensure that a defendant does not lose his right to an appeal unless he makes an "intelligent, understanding, and voluntary" relinquishment of it. A corollary is that, absent such a waiver, the state must initiate the defendant's appeal in all cases where the state provides trial counsel. I suggest that an appeal would have to be lodged in every such case,[8] since it would be impracticable for the state to know whether the defendant's counsel had taken a valid waiver without invading counsel's confidential relationship with the defendant.

While the waiver device might appear to be salutary as a further safeguard to a defendant's right to appeal, I submit that it is unnecessary. As I have pointed out, the law already requires that a defendant be timely advised of his right to appeal and, if he requests an appeal, that the state afford him competent counsel. In the event he does not receive either of these, he is entitled to relief in the form of a belated appeal or, if a trial transcript is unavailable, a retrial or release. To me, this is all the constitution demands. Because I cannot subscribe to the majority's expansive construction of the sixth amendment and would affirm the district court's dismissal of the petition, I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before BROWN, Chief Judge, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, MORGAN, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, and VANCE, Circuit Judges.

In the case before us there were obvious strategic reasons that could have formed the basis of a competent decision not to appeal. In fact, the district judge found that had petitioner succeeded on appeal in obtaining a new trial, and had he been convicted a second time, he could have been sentenced to death as rape was then a capital offense. The court also noted that the circumstances attending the rape in this case were "harsh indeed." The court found a "strong suggestion" that the risk of capital punishment entered into the decision to forego an appeal. Thus, it is quite possible that petitioner's counsel were competent, yet because they allegedly did not obtain a "waiver" from their client, they are now labeled as incompetent. Surely, their competence is of no moment. The competency language used by the majority is, I submit, but a vehicle for the development of a new due process concept.

appeal decision with their client, exceeded the standards of the day.

That the petitioner was advised that he could have taken an appeal had he wanted one is further evidenced by petitioner's testimony that his attorneys discussed appellate options in his presence. In sum, the lower court found that petitioner was aware of his right to an appeal and left the decision whether to appeal to his counsel.

7. Under the majority's rationale, the question whether a defendant has waived his right to an appeal does not necessarily depend on the competency of his counsel's performance. For example, it could well be that reasonably effective assistance of counsel was rendered in a given case, but that the defendant himself did not make a *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), waiver of his appellate rights. An analogy can be drawn to a *Miranda* situation where the interrogator fully advises the interviewee of his rights and where the interviewee makes a confession without a knowing, intelligent and voluntary waiver of his right to remain silent or to have counsel present. Though the advisement of rights may well be probative that a waiver took place, it is not dispositive since the critical issue turns on the interviewee's state of mind.

8. In cases where a particular jurisdiction permits an appeal to be taken from a conviction following a plea of guilty or nolo contendere, the holding of the majority would require an independent waiver of appeal in such cases as well. The folly of requiring a separate waiver of appeal in nolo or guilty plea cases should be readily apparent. In any event, the majority's new waiver standard is not limited to contested convictions.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc.

IT IS ORDERED that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.