**Joseph Herald ROSS, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

No. 83–5568.

United States Court of Appeals, Eleventh Circuit.

Aug. 13, 1984.

Rehearing and Rehearing En Banc Denied Oct. 12, 1984.

Craig S. Barnard, Chief Asst. Public Defender, Michael A. Mello, Asst. Public Defender, West Palm Beach, Fla., for petitioner-appellant.

Lydia M. Valenti, Richard G. Bartmon, Asst. Attys. Gen., West Palm Beach, Fla., for respondent-appellee.

Before HILL and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

The only issue warranting consideration of this state habeas corpus appeal is appellant's contention that the trial court erred in finding that appellant "waived" all questions of competency of counsel during his state court trial. The district court denied his petition for habeas corpus.

The facts relating to such possible waiver follow. Appellant was indicted in Florida by a two count indictment for (1) burglary of an occupied house; (2) grand larceny. Two weeks before trial, Ross and his counsel Addess, were given a hearing by the trial judge which he called a "pre-plea pre-sentence investigation." The judge opened the hearing by saying: "I read the pre-plea pre-sentence investigation and because of the gravity of the offense and the extensive criminal history of the defendant I am not willing to accept any negotiated plea at all."

Addess replied: "Judge the defendant is probably, is right now doing a period of 13 years in Virginia and a federal jurisdiction ... consecutive now, the only thing that defendant asks that whatever sentence that the judge sees fit to give, sees fit to give be concurrent with his time in Virginia and in the federal government."

After the court stated that in its opinion it could not give a concurrent sentence to one in another state, the following colloquy took place:

THE COURT: Well, has the defense and the State come to some agreement on disposition of this case?

MR. SELVIG: No, sir. In fact, it was the recommendation of the State at the time that the defendant, in fact, be sentenced consecutively if he would plead guilty. It was at the defendant's request that a pre-plea PSI was done.

MR. ADDESS: Your Honor, it would seem to me that a man who is doing consecutively 13 years would not have to do a consecutive time. This is the first time this man has been arrested and convicted here in the State of Florida and it wasn't a crime of violence. It wasn't—he had no gun. He had no weapon. There is nothing—he never has. Now, his prior record, which the State Attorney has, is mostly when he was a teenager, and a lot of those crimes all belong in one set of facts. Now, this man has been, hasn't been anything of a problem to any jurisdiction since, when was it, 1964?

THE DEFENDANT: Sixty-four.

MR. ADDESS: Since 1964, for 13 years, Your Honor, and we would say we are trying to save going to a trial, and the defendant is willing to make a plea. All he wants—

THE COURT: See, I'm not willing to give him a concurrent sentence.

MR. ADDESS: What's that, Your Honor?

THE COURT: I am not willing to give him a concurrent sentence at all. If I

give him any sentence, it will be consecutive.

MR. ADDESS: On those circumstances we can't agree to a plea.

THE COURT: So, your only alternative now is a trial. Okay?

MR. ADDESS: Yes, Your Honor.

THE DEFENDANT: Yes.

THE COURT: Very good.

Upon the opening of the trial, approximately two weeks later, the following discussion took place in open court in the absence of the jury but with the defendant present:

THE COURT: Before we send for the jury, Mr. Addess, do you wish for—it is my intention to charge the jury from the preliminary instructions and standard jury instructions do you wish for me to charge them on the defendant's decision not to testify?

MR. ADDESS: Your Honor, I have spoken to Mr. Ross and we have discussed the manner in which this case will be tried, and inasmuch as my client previously tried to plead guilty, and in view of the record made approximately two weeks ago, we'd like to stand mute in the trial, Your Honor. We do not feel that our participation in the trial would result in anything but the same verdict that he tried to plead to, and that's the way we feel.

Then, after the state made its opening statement to the jury, the court said: "Mr. Addess, you may make an opening statement, if you wish." Whereupon, Addess answered: "Your Honor, the defendant stands on his previous statement."

Thereafter, the court took a recess for lunch, after which the following occurred out of the presence of the jury but in the presence of the defendant. The prosecuting attorney made the following statement:

MR. SELVIG: I did a little bit of research over the noon hour, which was created by the position Mr. Addess is taking in the trial, specifically with regard to adequate representation by counsel at trial. I wish to avoid, if at all possible, of course, the creating of a defense on appeal of inadequate representation of counsel, so in looking at some of the case law over the lunch hour, the State Florida Supreme Court case, 1974, State versus Barber specifically holds that questions of adequacy of representation must be raised at trial or they can't even be raised at appeal. In other words, Mr. Ross would have to raise that issue at trial or he wouldn't be able to raise it on appeal. In light of that holding in that case, I would request at this time the Court make an inquiry directly of Mr. Ross whether he concurs in the trial strategy that Mr. Addess is taking and if he refuses to answer, which, of course, is his right, to specifically advise him he will be giving up his right to appeal on the basis of inadequate representation if he does not raise that at the trial level; otherwise, I'm just afraid that an unnecessary issue may be created by the proceedings.

THE COURT: Well, does the record show that Mr. Addess has been retained as counsel? He's not court-appointed, is he?

MR. ADDESS: No. I'm retained, Your Honor.

THE COURT: You are retained by the defendant?

MR. ADDESS: Yes, sir.

THE COURT: Mr. Ross, your attorney has asserted to the Court that it is your intention to stand mute during this trial and, of course, that's your right. You cannot be compelled to give testimony against yourself and you have the privilege and the right under the Constitution to remain silent, however, I want to point out to you that if your attorney says nothing during the course of this trial, if he does not raise any objections on your behalf, those objections are, or that question, evidence or testimony would be waived and you could not raise that on appeal. You do, of course, under the law have the right to be represented by effective and adequate counsel.

You have retained Mr. Addess to represent you. I want to know from you at this time do you have any objection to the manner in which Mr. Addess is representing you in this trial and, if you do not answer my question—of course, I'm not compelling you to answer it—but if you remain mute and do not answer my question, you will be waiving the right to appeal the adequacy and effectiveness of counsel, in the event that there is a conviction and in the event that you take an appeal or collaterally attack any conviction. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any objection to the manner in which your attorney is representing you?

THE DEFENDANT: No objection, Your Honor.

We have outlined all of the occurrences at and before trial upon which the district court determined that "a careful review of the record before this court clearly demonstrates the petitioner's knowing waiver of his right to object to counsel's performance at trial. The petitioner clearly concurred

with his attorney's trial strategy, and did not, at any time, object to such trial tactics."

In fact, during the trial that followed, Addess was invited by the trial judge to cross-examine each state witness. On each occasion he replied: "Your Honor, we stand on our previous statements."

Addess did, subsequently, object to the introduction of photographs and burglary tools; he moved for a judgment of acquittal; he again offered to plead his client guilty if the court would give a concurrent sentence,[1] and he made an opening and concluding argument to the jury.[2] On none of these occasions did Ross make any suggestion that he was in any way dissatisfied with the manner in which Addess was conducting the trial. In fact, during the discussion of a concurrent versus a consecutive sentence, he supplied some of the information to the trial judge to support Addess's argument.

Since appellant's other main contention on appeal is the lack of effective assistance of counsel at trial, based upon Addess's failure to investigate prior to trial and the

---

1. Counsel's statement follows:

MR. ADDESS: Then, on the same incident, he's doing consecutive from the Federal Government, so he's got a total of thirteen years he's doing from Virginia to Maryland and the Federal Government. Now, Your Honor, he was the one who instituted this proceeding to begin with, by suspending the agreement part of the Intrastate Compact, and with that kind of time, Your Honor, thirteen years, and two jurisdictions have already given him concurrent time, and considering the fact that before these crimes of Virginia, Maryland, before this one he has been out, hadn't been arrested or even bothered for thirteen years. He was a very outstanding, law-abiding citizen for those thirteen years, and I'm saying, Your Honor, he'll plead, and the only thing that withdraws the plea from us is the fact that there's been talking of consecutive time. Now, consecutive time is going to put him in for maybe twenty years or longer, and he has family obligations now, and he understands he did the wrong thing, and I don't think it's going to act as a rehabilitative or even punishment thing, when this other, there other jurisdictions have given him this type of—

To this statement, the judge stated: "I'm not willing to give him a concurrent sentence on his plea."

2. At the time set for oral argument, out of the presence of the jury, the following transpired:

MR. ADDESS: Your Honor, before the jury comes in, may I make a statement to put on the record?

THE COURT: Yes, sir.

MR. ADDESS: May it please the Court. The defendant and myself had remained silent during the trial for good reason that my defendant and I feel we should have; however, without giving up those rights that we may have established, I'd like to make just a few remarks to the jury.

THE COURT: Oh, yes, sure. You have the right to make an opening and closing statement.

MR. ADDESS: I understand, Your Honor, but I want it clear that we don't want to surrender any rights we may have.

Counsel then made a brief opening argument, the first sentence of which follows: "Ladies and gentlemen, notwithstanding my silence prior to this time, I would like to make some remarks to you about the case and how we view that the evidence came in."

failures to do the normal acts that might be expected of a lawyer vigorously representing his client's interests at the trial, we conclude that if Ross waived his right to what he now contends should be required as giving him effective assistance of counsel, then it is unimportant for us to decide whether counsel did or did not meet the standards of effective assistance of counsel. As to such standards, *see Strickland, Superintendent Fla. State Prison, et al. v. Washington,* — U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Each party here makes reasonable concessions with respect to the determination of the waiver issue. Appellant concedes, as he must, that a constitutional right to effective counsel can be waived if "competently and intelligently" made. *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The State, on the other hand, concedes that special care must be exercised by the trial judge in such a situation. In its brief, it says:

> The Fifth Circuit has ruled that in situations involving the right to competent counsel, a trial court's duty is to explain the significance of the issue or objection being waived, and the risks involved in such waiver. *Bonds v. Wainwright,* 564 F.2d 1125 (5th Cir.1977). In a decision most clearly on point, the First Circuit has mandated that a trial court's obligation in such situations is to directly address the criminal defendant, explain the defendant's choices, warn the defendant of the consequences of his choice, and then obtain a clear answer from the defendant, as to the course of action the defendant will pursue. *United States v. Lespier,* 558 F.2d 624, 630 (1st Cir.1977).

We add to these authorities the Fifth Circuit case, *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975). In *Garcia* the trial court had disqualified counsel for the appellant on the ground that such counsel had a conflict of interest. The record disclosed persistent efforts of the defendant to waive any imperfections in such representation. Citing *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309, the Court stated:

In accordance with the foregoing principles, we instruct the district court to follow a procedure akin to that promulgated in F.R.Crim.P. 11, whereby the defendant's voluntariness and knowledge of the consequences of a guilty plea will be manifest on the face of the record. (Cites omitted). As in Rule 11 procedures the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of legal representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment provisions. *Cf. United States v. Foster,* 469 F.2d 1 (1st Cir.1972). It is of course vital that the waiver be established by "clear, unequivocal and unambiguous language." (Cite omitted). Mere assent in response to a series of questions from the bench may in some circumstances constitute an adequate waiver, but the court should nonetheless endeavor to have each defendant personally articulate in detail his intent to forego this significant constitutional protection....

517 F.2d at 278.

The issue here approximates, but does not quite reach the issue of a conflict of interest by counsel. The presence and total acquiescence of Ross in each of the discussions held with respect to the nature of counsel's conduct, both before, at and during the trial causes us to believe that this is one of the cases in which "mere assent in response to a series of questions from the bench" "constitute[s] an adequate waiver." Here, there was, of course, something more even than "mere assent."

There were repeated statements in the presence of the defendant that he would plead guilty if the judge would grant him a concurrent sentence. There was also the demonstrated activity of trial counsel in partially "trying" the case, followed by a further request by counsel in defendant's presence that the trial court consider giving him a concurrent, rather than a consecutive sentence.

Without in any way derogating from the standards stated in *Garcia,* we conclude that the repeated statements by counsel in discussing his strategy and the full acquiescence of the defendant, in the special circumstances of this case, the district court did not err in concluding that Ross had waived his right to attack the effectiveness of counsel on appeal.

The judgment is AFFIRMED.