[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-13609

Non-Argument Calendar

_____

JOHN DITULLIO,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents- Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-00813-VMC-MRM

_____

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

John DiTullio is serving a life sentence for murder and attempted murder. He argues that his conviction was unconstitutional for two reasons: because his attorney performed ineffectively by failing to call a witness at his second trial who had testified at his first trial and because of several errors by the trial court. The district court denied his petition for habeas relief because the decision not to call the witness—which DiTullio fully endorsed during trial—was not deficient and because DiTullio failed to exhaust his other claims in state court. We agree with the district court's denial of the writ, and therefore affirm.

## I.

DiTullio was charged with first-degree murder and attempted second-degree murder in Florida state court, but convicting him took two tries. At his first trial, Samantha Troupe testified that another man had confessed to her that he had actually committed the crimes—not DiTullio. In response, the state called two rebuttal witnesses who challenged Troupe's credibility. The trial concluded with a deadlocked jury.

During the second trial, DiTullio and his attorney learned that Troupe had recently had a baby, and that the baby was still being cared for at a hospital. After several discussions between them and with the trial court, DiTullio and his attorney chose not

to call Troupe to the stand again and declined the court's offer to send a sheriff's deputy to bring her to testify if she was subpoenaed but refused to leave the hospital where her baby was being cared for. The illness of her newborn baby and "other factors," including new rebuttal witnesses that the state planned to put on the stand, steered the decision not to call Troupe at the second trial. DiTullio fully agreed with this decision, which the trial court confirmed by questioning him on the record multiple times.

DiTullio, however, did not agree with several of the court's trial rulings. The court allowed a juror to ask a question about DiTullio's personal beliefs over his attorney's objection. It also permitted a witness to testify about an alleged attack by DiTullio on a fellow inmate while he was awaiting trial, a story DiTullio argued was both irrelevant and prejudicial. Lastly, the court allowed entry into evidence of a "Christmas card" that DiTullio sent from jail to the father of one of the victims, despite DiTullio's argument that it was also unduly prejudicial.

At the second trial, the jury found DiTullio guilty on both counts and the court sentenced him to life in prison. He appealed, and the Florida appellate court affirmed. *DiTullio v. State*, 129 So. 3d 1073 (Fla. Dist. Ct. App. 2013) (unpublished). He then sought postconviction relief, which was also denied, and the state appellate court again affirmed. *DiTullio v. State*, 266 So. 3d 1156 (Fla. Dist. Ct. App. 2019) (unpublished).

DiTullio next sought federal habeas corpus relief. The twelve grounds included claims that his attorney had performed

deficiently by failing to call Troupe during the second trial and that the trial court had erred in permitting the juror question, allowing testimony about the jail assault, and finding that the Christmas card was admissible. The district court denied the writ and a certificate of appealability, holding that DiTullio's attorney had not performed deficiently and that DiTullio had failed to raise the federal nature of his other claims in the state court proceedings.

This Court granted a certificate of appealability for two questions: (1) whether DiTullio's trial counsel performed ineffectively by failing to present Troupe's testimony at his second trial and (2) whether the district court erred in finding that three of his other claims were procedurally defaulted.

## II.

We review a district court's denial of a § 2254 petition de novo. *Bester v. Warden*, 836 F.3d 1331, 1336 (11th Cir. 2016).

## III.

DiTullio argues that his trial attorney performed deficiently by declining to call Troupe at his second trial and that the Florida courts erred in finding otherwise. He also contends that he raised the federal nature of his other claims before those courts sufficiently to exhaust his state remedies. We disagree twice over.

## A.

We start with the ineffective assistance of counsel claim. To establish constitutionally ineffective assistance of counsel, a defendant must make two showings. *Strickland v. Washington*, 466

22-13609          Opinion of the Court          5

U.S. 668, 687 (1984). To start, the attorney must have performed deficiently. *Id.* So long as they are reasonable, strategic choices do not demonstrate deficient performance—regardless of how they turn out for a defendant. *Id.* at 680–81, 690–91. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Knight v. Florida Dep't of Corr.*, 936 F.3d 1322, 1340 (11th Cir. 2019) (quotation omitted). A defendant's knowing acquiescence to his attorney's trial strategy counsels against finding deficient performance. *Hammond v. Hall*, 586 F.3d 1289, 1327 (11th Cir. 2009); *Lobosco v. Thomas*, 928 F.2d 1054, 1057 (11th Cir. 1991); *Ross v. Wainwright*, 738 F.2d 1217, 1222 (11th Cir. 1984). And as we have said, a defendant must also show that the attorney's deficiency caused prejudice. *Strickland*, 466 U.S. at 687.

This exacting standard is made even more demanding by federal habeas corpus law. Because the Florida courts resolved DiTullio's claims on the merits, we may grant habeas relief only if their decision either was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). Factual findings by the state courts can only be set aside if the prisoner shows they were erroneous by clear and convincing evidence. *Id.* § 2254(e)(1). "Put simply, state-court decisions must be given the benefit of the doubt—there must have been no reasonable basis for the state court's action" in order for us to disturb it. *Bowen v. Sec'y, Florida Dep't of Corr.*, 92 F.4th 1328, 1333 (11th Cir. 2024) (quotations omitted). When ineffectiveness

is reviewed under § 2254(d), the question becomes "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

DiTullio says that his Sixth Amendment right to counsel was violated because his attorney did not put Troupe on the stand again during the second trial. Not compelling her to testify was deficient, he says, and the more favorable outcome of his first trial when she did testify—a hung jury—demonstrates prejudice.

We see things differently; the choice not to call Troupe a second time was a strategic one. A number of considerations could have justified the decision. *See Gordon v. United States*, 518 F.3d 1291, 1302 (11th Cir. 2008). For one, DiTullio's attorney feared that the prosecution's rebuttal witnesses would undermine Troupe's credibility and harm DiTullio's defense. Before DiTullio and his attorney finally settled on not calling her as a witness, DiTullio's attorney explained to the court that the "multiple new witnesses" the state had added since the prior trial were "a significant factor in the decision." And after informing the court that DiTullio would not call Troupe as a witness, his attorney explained that the decision was made "knowing the witnesses that the State would call in rebuttal." DiTullio has not shown that the state court erred in finding that strategic considerations motivated his attorney's decision. *See* 28 U.S.C. § 2254(e)(1).

And that strategy was not unreasonable. The prosecutor told the jury that the state's witnesses would testify that Troupe's story was "not at all accurate." DiTullio's attorney may have

22-13609                 Opinion of the Court                 7

feared that the combination of the state's impeachment witnesses and Troupe potentially being uncooperative because she did not want to leave her hospitalized baby would weaken DiTullio's case. *Rhode v. Hall*, 582 F.3d 1273, 1284 (11th Cir. 2009).

What's more, DiTullio himself fully consented to this choice. His attorney discussed with him the "pros and cons" of calling Troupe in light of her recent baby and the state's new witnesses. Three times DiTullio explicitly confirmed on the record to the trial court that he supported this decision. He told the court that he "[a]bsolutely" concurred that not compelling Troupe to testify was in his "best interest." Even after the trial court advised DiTullio that Troupe had been "a linchpin" of his case in the first trial, he remained adamant that he agreed not to call her. After so unequivocally and repeatedly bestowing his blessing on this strategy, DiTullio carries a high burden to show that pursuing it deprived him of his Sixth Amendment right to counsel. *See Hammond*, 586 F.3d 1327; *Lobosco*, 928 F.2d at 1057; *Ross*, 738 F.2d at 1222. He has not carried that burden here.

**B.**

DiTullio's argument that the district court erred when it found that his three other claims were procedurally barred because he failed to apprise the state courts of their basis in federal law fares no better. To seek habeas relief under § 2254, a state prisoner must first have exhausted all available state court remedies. *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1351 (11th Cir. 2012). That requires a prisoner to "make the state court aware that the claims

asserted present federal constitutional issues." *Id.* at 1352 (quotation omitted). And a "petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim." *Preston v. Sec'y, Florida Dep't of Corr.*, 785 F.3d 449, 458 (11th Cir. 2015).

DiTullio did not raise his federal claims before the Florida courts. His argument that the trial court incorrectly permitted a juror's question was entirely framed around Florida evidentiary law. The only reference in his state appellate briefs to a federal basis for his claim was a single vague allusion to his "rights to due process and to a fair trial, as guaranteed by the Florida and United States Constitutions" in the final sentence of the section. For the other two grounds, DiTullio says only that he "made similar constitutional arguments" to the state court.

DiTullio, like McNair, argued his claims under state law, with only a vague and passing reference to the federal Constitution. *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005). That is not enough to make the state courts aware of the federal nature of his claims. *Id.* "Because the gravamen of his claim, as presented to the state courts, dealt with state law," DiTullio "failed to exhaust his federal claim." *Preston*, 785 F.3d at 458. And DiTullio has shown neither cause and prejudice nor a fundamental miscarriage of justice that would convince us to overlook the procedural default here. *Id.* at 462.

★    ★    ★

We **AFFIRM** the district court's denial of DiTullio's § 2254 petition.