[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14706

_____

D.C. Docket No. 6:08-cv-02085-GAP-GJK

ROBERT ANTHONY PRESTON, JR.,

Petitioner - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(April 29, 2015)

Before MARCUS, WILLIAM PRYOR and MARTIN, Circuit Judges.

MARCUS, Circuit Judge:

Robert Preston appeals from the district court's denial of his federal habeas

petition. A jury convicted Preston of premeditated murder for the brutal 1978

killing of Earline Walker and recommended that he be sentenced to death. The

sentencing court imposed the ultimate penalty.  Nearly thirty years later, Preston filed a habeas petition in federal district court, raising twenty-eight claims.  The district court denied habeas relief on all of them.  We granted a certificate of appealability on one claim, which alleges that the state failed to present sufficient evidence of premeditation at trial, and that Preston's conviction, therefore, violated his due process rights.  See Jackson v. Virginia, 443 U.S. 307 (1979).  After thorough review, we affirm the district court's denial of habeas relief.

For starters, to obtain a writ under 28 U.S.C. § 2254, Preston must show that he exhausted state court remedies for challenging his conviction.  He does not, and did not.  Before the Florida Supreme Court, Preston brought only a state sufficiency of the evidence claim, and relied on Florida's heightened burden of proof in cases involving circumstantial evidence.  Notably, neither his claim nor his briefs cited to any federal cases, let alone Jackson v. Virginia; he did not mention the Jackson standard; he did not cite to the Due Process Clause of the Fourteenth Amendment or any other federal constitutional provisions; indeed, he did not even mention the word "federal" or refer to federal law in any other way.  Because Preston did not make the state court aware that his claim included a federal constitutional claim, he did not fairly present his federal claim to the Florida courts, and he is procedurally barred from asserting it now.  The petitioner,

2

after all, was obliged to first give the state courts a meaningful opportunity to address his federal claim. This he did not do.

But, even if Preston could now bring a federal due process claim under Jackson, he does not show that he is entitled to relief. We may only grant his habeas petition if the Florida Supreme Court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or "was based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d). The Florida Supreme Court reasonably concluded that a rational trier of fact could find premeditation based on the evidence produced at trial, which included the nature of the wounds on Walker's body, the weapon used to inflict those wounds, Preston's statements on the eve of the murder, and the fact that Preston took Walker to a remote location and killed her, after robbing the local convenience store at which she worked.

## I.

## A.

The essential facts are these. In January 1978, Earline Walker was employed as a night clerk at a Li'l Champ convenience store in Forest City, Florida. She was reported missing from the store at around 3:30 a.m. on the morning of January 9, when an officer from the Altamonte Springs Police Department ("ASPD") conducted his regular patrol. The doors to the store had

3

been locked, and when a Li'l Champ regional supervisor let the officer into the store, he discovered that $574.41 was missing from the store's register and safe. Around 1:45 p.m. that same day, an ASPD detective discovered Walker's nude and mutilated body in an open field a mile and a half from the store. Her car had been abandoned on the side of the road bordering the field, several hundred feet away from where her body was located.

The wounds suffered by Walker were severe. Specifically, she had been nearly decapitated. She also sustained several broken ribs and multiple stab wounds, including a cross mark carved onto her forehead and an eight-centimeter wound to her vagina. The medical examiner, Dr. Gumersindo Garay, estimated that the cause of Walker's death had been massive blood loss resulting from her near-decapitation, which was inflicted by a slash to the neck from behind while she was standing. She would have lost consciousness immediately and died within a minute or two. The remaining wounds were likely inflicted while her body was lying on the ground. Dr. Garay also determined that Walker's wounds had probably been inflicted by a four to five inch blade.

At the time, the petitioner, Preston, lived with his brothers, Scott and Todd, at his mother's home, which was located about a quarter of a mile from the field where Walker's body was discovered. At roughly 12:30 a.m. on the morning of January 9, Preston knocked on Scott's door, asking him to go to the Parliament

4

House, a bar in the area, "to get some money." When Scott declined, Preston said "Okay, then. I'll just go do it myself." He also asked Scott and his girlfriend, Donna Maxwell, to help him inject some PCP. They refused to do so. Preston left the house and returned at 4:30 a.m. When he returned, he asked Scott and Maxwell to help him count some money. Preston was acting excited and told them, "All right. I did it." Because he "wasn't acting normal," they counted the money for him, which came to approximately $325. Preston told Scott and Maxwell that he and a friend, Crazy Kenny, had robbed two men at the Parliament House and taken their money. However, there was no police report of any incident at the Parliament House that night, and the head security guard on duty at the Parliament House testified at trial that he was aware of no disturbances. A woman driving late that night also testified at trial that she had observed Preston at a Jack in the Box in the area shortly after 2 a.m. Around 9 a.m. the next morning, several hours before the police found Walker's body, Preston told Maxwell that the body of a woman who worked in a store near his home had been discovered in a field.

Preston was arrested the following day on an unrelated charge. The police conducted a search of Preston's home with the consent of his mother, and discovered a jacket as well as several food stamps which police confirmed had been used to make purchases at the Li'l Champ convenience store in the days before the murder. In addition to the food stamps, several pieces of forensic

5

evidence tied Preston to the murder of Earline Walker.  The police found a light brown pubic hair on his belt buckle when he was taken into custody, which could have come from Walker.[1]  Blood stains on Preston's jacket were revealed to be of the same blood type and enzyme group as Walker's.  The police found several fingerprints in Walker's car that matched Preston's prints.  Maxwell also testified at trial that Preston habitually carried a five inch folding "buck knife," which could have been used to inflict the wounds on Walker's body.

At trial, Preston took the stand on his own behalf, and testified that he had been at his home the night of January 8.  He said, however, that he injected PCP that night, and had very little recollection of what happened next.  He did recall trying to count some money, and had some memory of going to the Parliament House in a car driven by Crazy Kenny.  He could not remember touching Walker's automobile, and said that, to the best of his recollection, he had not been near the Li'l Champ store for several months before the murder.  He claimed that he found the food stamps behind a Li'l Champ store on the morning of the murder, when he went out to buy cigarettes.  He admitted that he spoke with Maxwell about the discovery of a body, but said that the conversation occurred around 3:30 to 4:30 p.m. -- after the police had discovered Walker's body.

---

[1] DNA testing later revealed that the belt buckle hair did not come from Walker.  However, the Florida Supreme Court subsequently concluded that this discovery would not have probably yielded an acquittal.  Preston v. State, 970 So. 2d 789, 797 (Fla. 2007) (per curiam).

6

B.

In connection with the killing of Earline Walker, Preston was charged with seven counts in all: four counts of first-degree murder, along with robbery, kidnapping, and sexual battery. After a jury trial, he was convicted of premeditated murder, felony murder committed in the course of a robbery, and felony murder committed in the course of a kidnapping, as well as the underlying charges of robbery and kidnapping. The trial court entered a judgment of acquittal on the count of felony murder committed in the course of a sexual battery and the count of sexual battery. Following the penalty phase, the jury recommended death by a vote of seven to five. The trial court found four aggravating circumstances: Preston had a prior violent felony conviction, Fla. Stat. § 921.141(5)(b); the murder was committed immediately after Preston committed robbery and while he was engaged in the commission of a kidnapping, id. § 921.141(5)(d); the murder was especially heinous, atrocious, or cruel, id. § 921.141(5)(h); and the murder was committed in a cold, calculated, and premeditated manner, id. § 921.141(5)(i).[2] Finding no mitigating factors, the trial court sentenced Preston to death.

In his direct appeal to the Florida Supreme Court, Preston raised five claims, including a claim that the evidence of premeditation presented at his trial was

---

[2] The trial court also found that the murder was committed in conjunction with a robbery for pecuniary gain, Fla. Stat. § 921.141(5)(f), but did not consider this factor because it overlapped with the aggravating factor involving the commission of a robbery.

7

insufficient (Ground 2).  The Florida Supreme Court rejected all of his claims and

affirmed his conviction and sentence.  Preston v. State (Preston I), 444 So. 2d 939,

941 (Fla. 1984) (per curiam) vacated, 564 So. 2d 120 (Fla. 1990) (per curiam).  As

for his sufficiency of the evidence argument, the Florida Supreme Court explained:

> As his second point of error, appellant alleges that the trial court erred by failing to grant his motions for judgment of acquittal.  Appellant's argument is that the record fails to contain sufficient evidence of the element of premeditation to sustain Preston's conviction for first-degree murder.  The appellant admits that the record contains compelling evidence but that it is solely circumstantial.
>
> Premeditation can be shown by circumstantial evidence.  Sireci v. State, 399 So.2d 964, 967 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S. Ct. 2257, 72 L. Ed. 2d 862 (1982); Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S. Ct. 3227, 49 L. Ed. 2d 1221 (1976).  Whether or not the evidence shows a premeditated design to commit a murder is a question of fact for the jury.  Larry v. State, 104 So.2d 352, 354 (Fla. 1958).  In Larry v. State, this Court stated:
>
> "Evidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.  It must exist for such time before the homicide as will enable the accused to be conscious of the nature of the deed he is about to commit and the probable result to flow from it in so far as the life of his victim is concerned.  No definite length of time for it to exist has been set and indeed could not be."
>
> Id. (citations omitted).
>
> There is substantial evidence from which premeditation could have been inferred by the jury. The victim sustained multiple stab wounds. The nature of the injuries she sustained were [sic] particularly brutal. There was almost a complete severance of her neck, trachea, carotid

8

arteries and jugular vein. The medical examiner stated the murder weapon was probably a knife of four or five inches in length. Such deliberate use of this type of weapon so as to nearly decapitate the victim clearly supports a finding of premeditation.

Considering all reasonable inferences which the jury could draw from the appellant's statements and the nature and manner of the wounds inflicted on the victim, we cannot conclude that the determination of the trial court was erroneous.

Id. at 943-44.

Preston unsuccessfully filed a series of motions and petitions seeking state post-conviction relief. In none of these did he reassert his claim that the evidence presented at his trial was insufficient to show premeditation. However, the Florida Supreme Court eventually vacated Preston's death sentence, because an unrelated prior violent felony conviction had been vacated in state court, and remanded for resentencing. Preston v. State, 564 So. 2d at 123.

In January 1991, Preston was tried again at the penalty phase, and a new penalty phase jury recommended death by a vote of nine to three. However, the trial court granted Preston's motion for still another penalty phase trial because one of the jurors had failed to disclose his part-time job at a convenience store during voir dire. In April 1991, the trial court impaneled another penalty phase jury and conducted a now third penalty phase trial. In that proceeding, the state urged the jury to find four aggravating factors: the murder was committed during the commission of a kidnapping, Fla. Stat. § 921.141(5)(d); the murder was committed

9

for the purpose of avoiding arrest, id. § 921.141(5)(e); the murder was committed for pecuniary gain, id. 921.141(5)(f); and the murder was especially heinous, atrocious, or cruel, id. § 921.141(5)(h).  The defense focused largely on Preston's age at the time of the murder, his history of substance abuse, and his troubled family life as mitigating factors.  The jury again recommended a sentence of death, only this time by a unanimous vote.  The trial court found the four aggravating circumstances presented by the state.  It also found one statutory mitigating factor and five nonstatutory mitigating factors presented by Preston,[3] but it accorded them little weight.  The court then sentenced Preston to death.  The sentence was affirmed by the Florida Supreme Court.  Preston v. State, 607 So. 2d 404 (Fla. 1992) (per curiam), cert. denied, 507 U.S. 999 (1993).

After filing still another motion for post-conviction relief and another state habeas petition, which were both denied, Preston commenced the instant federal habeas petition in the United States District Court for the Middle District of Florida on December 15, 2008.  He raised twenty-eight claims, including a claim that the evidence presented at his trial was insufficient to prove premeditation beyond a reasonable doubt (Ground 4).  The district court denied Preston relief on all of them.  Preston v. Sec'y, Dep't of Corr., No. 6:08-CV-2085-ORL-31GJK, 2012 WL

---

[3] The trial court found Preston's age at the time of the murder to be a statutory mitigating factor, Fla. Stat. § 921.141(6)(g), and found as nonstatutory mitigation that he had a difficult childhood, a good prison record, potential for rehabilitation, he had expressed remorse, and he was a loving son with "positive qualities."

10

1549529, at *1 (M.D. Fla. May 1, 2012). As for his sufficiency of the evidence claim, the district court concluded that it raised "a matter of state law for which federal habeas corpus relief does not lie." Id. at *11. In the alternative, the district court held that the evidence presented at trial was sufficient to allow the issue of premeditation to go to the jury. Id. at *13. The court also noted that Preston did not show that he was entitled to relief under 28 U.S.C. § 2254. Id. at *13 n.13. That is, he showed neither that the Florida Supreme Court's decision was "contrary to, or involved an unreasonable application of" clearly established federal law, nor that it rested on an "unreasonable determination of the facts." Id. The district court denied a certificate of appealability ("COA") on all of Preston's claims. Id. at *47. However, this Court subsequently granted a COA on the sole question of whether the evidence of premeditation presented at Preston's trial was constitutionally insufficient.

## II.

Preston does not contest the application of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") to his claims. Under AEDPA, if a petitioner's habeas claim "was adjudicated on the merits in State court proceedings," a federal court may not grant habeas relief unless the state decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,"

11

or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Under § 2254(d)(1)'s 'contrary to' clause, we grant relief only 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" Jones v. GDCP Warden, 753 F.3d 1171, 1182 (11th Cir. 2014) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)). "Under § 2254(d)(1)'s 'unreasonable application' clause, we grant relief only 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (alteration in original) (quoting Williams, 529 U.S. at 413).

To prevail under § 2254(d), a petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). Preston must show that the state court's decision was "objectively unreasonable, not merely wrong; even clear error will not suffice." White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quotation omitted). Put differently, Preston must establish that no fairminded jurist would have reached the Florida

12

court's conclusion.  See Richter, 562 U.S. at 101; Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257 (11th Cir. 2012).  "If this standard is difficult to meet, that is because it was meant to be."  Richter, 562 U.S. at 102.  Likewise, "[u]nder § 2254(d)(2), [t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold."  Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288, 1293-94 (11th Cir. 2015) (second and third alterations in original) (footnote and quotation omitted).  A state court's determination is unreasonable "when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but [the petitioner's factual claim], and when a state court's finding was clearly erroneous."  Id. at 1294 (alteration in original) (citation and quotations omitted).

III.

A.

We first examine whether Preston is procedurally barred from asserting his federal sufficiency of the evidence claim (a Jackson due process argument) because he failed to raise that claim before the Florida Supreme Court.  "Exhaustion presents a mixed question of law and fact that we review de novo."  Mauk v. Lanier, 484 F.3d 1352, 1357 n.3 (11th Cir. 2007); see also Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351 (11th Cir. 2012) ("[W]e review de

13

novo a district court's ruling on a procedural bar question."). The state of Florida asserted that Preston's federal claim was procedurally barred, but the district court did not appear to address the question.[4] Instead, the district court concluded that "[t]o the extent [Preston] relies on his state law arguments" to show that the prosecution did not present sufficient evidence of premeditation, the "issue is a matter of state law for which federal habeas corpus relief does not lie." Preston, 2012 WL 1549529, at *11.

We think that Preston's claim, as reformulated on appeal before this Court, is plainly a federal one. But now Preston has a different problem: the federal due process version of his sufficiency of the evidence claim was asserted for the very first time in his reply to the state's response to his federal habeas petition. He did not present his claim as a federal claim to the Florida Supreme Court on direct appeal, nor in any subsequent state petition for post-conviction relief, nor even in the habeas petition he filed in federal district court.[5] We hold, therefore, that

---

[4] At the end of the district court's analysis, it observed that "relief must be denied based on section 2254(d)" because "[t]he claim was adjudicated on the merits by the Florida Supreme Court," and Preston could not show that he was entitled to relief under section 2254(d)(1) or (2). We do not read the district court's statement that the claim was "adjudicated on the merits" to be a conclusion that Preston had exhausted his federal claim; instead, the district court was noting that Preston could not meet the standard for federal habeas relief. But, to the extent the district court's opinion is read as concluding that Preston had exhausted his claim, that would be erroneous, for the reasons we explain at some length.

[5] Although we think it dubious that a petitioner can wait until his memorandum in opposition to the state's response to fully present his federal claims, cf. Lovett v. Ray, 327 F.3d 1181, 1183 (11th Cir. 2003) (refusing to consider arguments presented for the first time in a reply brief), we

14

Preston failed to exhaust his federal claim in the Florida courts, and he is procedurally barred from asserting it on federal habeas review.

It is by now axiomatic that, before seeking habeas relief under § 2254, a petitioner "must exhaust all state court remedies available for challenging his conviction." Lucas, 682 F.3d at 1351; see 28 U.S.C. § 2254(b)(1). "For a federal claim to be exhausted, the petitioner must have fairly presented [it] to the state courts." Lucas, 682 F.3d at 1351 (alteration in original) (quotation omitted). The purpose of the exhaustion requirement is straightforward: the petitioner must have given the state courts a "meaningful opportunity" to address his federal claim. McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quotation omitted). That is, the state courts must have had an "'opportunity to apply controlling legal principles to the facts bearing upon [the petitioner's federal] constitutional claim.'" Kelley v. Sec'y for Dep't of Corr., 377 F.3d 1317, 1344 (11th Cir. 2004) (quoting Picard v. Connor, 404 U.S. 270, 277 (1971)). Ultimately, "to exhaust state remedies fully[,] the petitioner must make the state court aware that the claims asserted present federal constitutional issues." Jimenez v. Fla. Dep't of Corr., 481 F.3d 1337, 1342 (11th Cir. 2007) (per curiam) (quotation omitted).

---

assume without deciding that Preston did not waive his claim by failing to present it as a matter of federal due process in his federal habeas petition.

Of course, a petitioner need not use magic words or talismanic phrases to present his federal claim to the state courts. The Supreme Court has suggested that a petitioner can exhaust his claim by, for example, "including . . . 'the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim [as a federal one].'" Lucas, 682 F.3d at 1351 (quoting Baldwin v. Reese, 541 U.S. 27, 32 (2004)). He "is not required to cite 'book and verse on the federal constitution.'" Id. at 1352 (quoting Picard, 404 U.S. at 278). Nor are we so "draconian or formalistic as to require petitioners to give a separate federal law heading to each of the claims they raise in state court to ensure exhaustion for federal review." Kelley, 377 F.3d at 1344. It is not, however, "sufficient merely that the federal habeas petitioner has been through the state courts, nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." Id. at 1343-44 (citation omitted). The crux of the exhaustion requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim.

In a pair of cases, we've provided important guidance on what petitioners must do to exhaust. In McNair v. Campbell, the petitioner claimed that the jury improperly considered extraneous evidence during its deliberations. 416 F.3d at 1301. At the outset, we noted that the "exhaustion doctrine requires a habeas

16

applicant to do more than scatter some makeshift needles in the haystack of the state court record." Id. at 1303 (quotation omitted). Before the Alabama Supreme Court, the petitioner couched his argument in terms of state law, with only two references to federal law: a single federal district court case, found in a seven-case string citation, and a blanket statement in closing that both his federal and state constitutional rights were violated. Id. He did not mention "the federal standard that extraneous evidence is presumptively prejudicial," nor did he cite "any United States Supreme Court or federal appellate court case dealing with extraneous evidence." Id. at 1303-04. Because the gravamen of his claim, as presented to the state courts, dealt with state law, we held that the petitioner failed to exhaust his federal claim.

We were confronted with a somewhat different scenario in Lucas v. Secretary, Department of Corrections, where the petitioner failed to specify whether his claim arose under state or federal law in his briefing before the Florida Supreme Court. He averred only that he had been deprived "of his constitutional right of confrontation of witnesses against him." Lucas, 682 F.3d at 1352 (quotation omitted). The difficulty was that both the federal and Florida Constitutions grant a right to confront witnesses. Id. The petitioner did not cite to any cases discussing the confrontation right, nor did he refer to any specific constitutional provisions. Id. at 1353. His allusion to a "constitutional right of

17

confrontation," standing alone, did not "fairly apprise[] the state court of his federal constitutional right-to-confrontation claim." Id. at 1352-53 (emphasis added). Our conclusion was guided in substantial measure by the Supreme Court's decision in Baldwin v. Reese, where the petitioner asserted an ineffective assistance of counsel claim. 541 U.S. at 30. Much like the petitioner in Lucas, the petitioner in Baldwin did not explain whether his claim arose under the federal or Oregon Constitution. Id. at 33. The Supreme Court, therefore, held that his mere reference to "ineffective assistance" did not fairly present a federal claim. Id. at 32. Together, Lucas and Baldwin stand for the proposition that a petitioner with a claim that could arise under either state or federal law must clearly indicate to the state courts that he intends to bring a federal claim.

Preston did not even hint to the Florida Supreme Court that he intended to raise a federal claim.[6] In fact, the first indication that his sufficiency of the

---

[6] At oral argument, counsel for Preston suggested for the first time that Preston couched his motion for judgment of acquittal before the trial court in terms of federal due process. Preston first moved for acquittal when the state rested. At that time, however, trial counsel stated only that there was "no evidence" of premeditation, and that the evidence instead indicated that Walker had died as a result of "sudden combat." And, when Preston moved for acquittal at the close of the trial, counsel explained, relying on state law, that "circumstantial evidence must . . . be inconsistent with any reasonable theory . . . of . . . the Defendant's innocence." On neither occasion did Preston mention Jackson, the Due Process Clause, or any other provision of federal law. But, even if Preston had framed his claim as a federal one before the trial court, what matters is how he characterized the claim in his briefing before the Florida Supreme Court. The Supreme Court has observed that a petitioner "does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." Baldwin, 541 U.S. at 32. Florida's high court was under no obligation to

18

evidence claim was a federal one came in his reply to the state's response to his federal habeas petition -- not in his briefing before the Florida Supreme Court and subsequent petitions for state post-conviction relief, nor even in his federal habeas petition. In his initial brief to the Florida Supreme Court, Preston simply claimed that "the record . . . fails to contain sufficient evidence . . . of premeditation." He did not cite a single federal case, and relied instead on a panoply of Florida cases discussing the element of premeditation, as defined by state law. He never mentioned the federal Due Process Clause or, indeed, any other federal constitutional provision. This renders Preston even worse off than the petitioner in McNair, who at least raised a federal case and referred, albeit ambiguously, to deprivations of constitutional rights. See 416 F.3d at 1303. Moreover, Preston did not cite Jackson v. Virginia, nor even mention the Jackson standard for assessing sufficiency of the evidence challenges. See Jackson, 443 U.S. at 324. Cf. McNair, 416 F.3d at 1303 (noting that the petitioner failed to mention the federal standard applicable to his claim).

---

review the trial transcript to discern the legal foundation for Preston's claim. But even had it done so, it would not have been fairly told that Preston was raising a federal constitutional claim grounded in Jackson and the Due Process Clause.

19

Instead, Preston asserted in his brief that his conviction rested on insufficient evidence, without clarifying whether he intended to bring a federal or a state sufficiency of the evidence claim. Much like the petitioners in Lucas and Baldwin, Preston invoked a phrase common to both federal and state law without explaining which body of law provided the basis for his claim. "Simply referring" to sufficiency of the evidence "is not a sufficient reference to a federal claim, any more than a reference to" a constitutional right of confrontation of witnesses, Lucas, 682 F.3d at 1352, or ineffective assistance of counsel, Baldwin, 541 U.S. at 32-33, was sufficient in the past. It is also noteworthy that Preston's briefing made reference to the Constitution, including due process, "in respect to other claims but not in respect to this one." Baldwin, 541 U.S. at 33. The Florida Supreme Court could reasonably conclude (as it undoubtedly did) that when Preston claimed the evidence used to obtain his conviction was insufficient, he meant to challenge that conviction on the basis of state law alone. The long and short of it is that Preston failed to even scatter some "makeshift needles in the haystack of the state court record." McNair, 416 F.3d at 1303 (quotation omitted).

The rest of the appellate proceeding unfolded as one might expect. The state, for its part, did not refer to any federal cases or federal constitutional provisions. Preston's reply brief also did not refer to federal law in any way. And, in addressing Preston's sufficiency of the evidence challenge, the Florida Supreme

20

Court relied entirely on Florida cases and Florida law.  It never once referred to any rule of federal law, let alone the Due Process Clause, in resolving Preston's claim.  Preston I, 444 So. 2d at 943-44.  Why would it?  After all, "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution."  Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam).  Under these circumstances, Preston "cannot be said to have fairly apprised the state court of his federal . . . claim."  Lucas, 682 F.3d at 1353.  Florida's high court cannot be faulted for failing to sift through the tea leaves of Preston's briefing to reveal a federal claim that he never raised, expressly or otherwise.  We, therefore, conclude that Preston failed to exhaust his federal Jackson claim before Florida's courts.

### B.

Preston cannot, and does not, argue that he ever expressly raised a federal sufficiency of the evidence claim before the Florida Supreme Court.  Instead, he says that raising a state sufficiency of the evidence claim suffices to raise a federal Jackson claim.  More broadly, Preston's argument would suggest that a petitioner's assertion of a state claim serves to exhaust an analogous and identical federal claim.  This question was left open in Baldwin, since the Supreme Court declined to consider whether, "where . . . identity exists, a petitioner need not

21

indicate a claim's federal nature, because, by raising a state-law claim, he would necessarily 'fairly present' the corresponding federal claim." 541 U.S. at 33-34. Preston claims that this rule has been adopted in several unpublished opinions of this Court, see, e.g., Mulnix v. Sec'y for Dep't of Corr., 254 F. App'x 763, 764-65 (11th Cir. 2007) (per curiam), as well as by several of our sister circuits, see, e.g., Jackson v. Edwards, 404 F.3d 612, 621 (2d Cir. 2005). At the same time, other opinions of this Court have suggested that raising a state claim does not exhaust an identical federal one. See, e.g., Ramos v. Sec'y, Fla. Dep't of Corr., 441 F. App'x 689, 697 (11th Cir. 2011) (per curiam); Pearson v. Sec'y, Dep't of Corr., 273 F. App'x 847, 850 (11th Cir. 2008) (per curiam).

As we see it, it is not at all clear that a petitioner can exhaust a federal claim by raising an analogous state claim. In light of Lucas, simply mentioning a phrase common to both state and federal law, like "sufficiency of the evidence," cannot constitute fairly presenting a federal claim to the state courts. And, as the Supreme Court has explained, "[i]t is not enough that . . . a somewhat similar state-law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) (emphasis added). What's more, it strikes us as surpassing strange to say that the Florida Supreme Court reached a decision that was "contrary to, or involved an unreasonable application of" Jackson, a case that was never presented to the court and that the court, therefore, had no opportunity to consider. See 28 U.S.C. §

22

2254(d).[7]  Nevertheless, we need not, and do not, decide this question because Preston's state and federal sufficiency of the evidence claims are plainly not identical.  Thus, even if we were disposed to adopt the general rule he urges, it would do him no good.

For starters, in cases turning on circumstantial evidence, the Florida standard for assessing a sufficiency of the evidence challenge differs greatly from the federal standard.  While Florida may apply the Jackson standard in resolving an ordinary sufficiency claim, see, e.g., Melendez v. State, 498 So. 2d 1258, 1261 (Fla. 1986), a "special standard of review of the sufficiency of the evidence applies where a conviction is wholly based on circumstantial evidence," or "predicated chiefly upon circumstantial evidence," Thorp v. State, 777 So. 2d 385, 389 (Fla. 2000) (per curiam) (quotation omitted).  It is an age-old rule in Florida that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence."  Id. (quotation omitted); see, e.g., Lowe v. State, 105 So. 829, 830 (Fla. 1925) (requiring that the

---

[7] In Jackson, the Supreme Court explained that a petitioner who alleges that the evidence to support his conviction was insufficient "has stated a federal constitutional claim."  443 U.S. at 321.  But the Court did not mean that a petitioner need not exhaust his federal constitutional claim before the state courts, because the Court explained in the very next sentence that such a claim is cognizable only "assuming that state remedies have been exhausted."  Id.

evidence be "irreconcilable with any reasonable theory of [the defendant's] innocence and exclude to a moral certainty every hypothesis but that of his guilt").

It is precisely the Florida rule, however, that the Supreme Court has <u>rejected</u> as a matter of federal law. In <u>Jackson</u>, the case upon which Preston rests his entire sufficiency of the evidence challenge, the Court instructed that a petitioner is entitled to relief under the Due Process Clause <u>only</u> if "no rational trier of fact could have found proof of [his] guilt beyond a reasonable doubt." <u>Jackson</u>, 443 U.S. at 324. Under federal law, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." <u>Id.</u> at 326. This remains true even when the only evidence relied on is "circumstantial evidence in the record." <u>Id.</u> at 324. Thus, in cases involving circumstantial evidence, whether a defendant raises his sufficiency claim in terms of state or federal law can matter a great deal.

Preston invoked and relied upon Florida's unique rule for convictions based on circumstantial evidence in challenging his conviction. In his briefing before the Florida Supreme Court, Preston stated that "[a]lthough containing compelling evidence, the record in this case is solely circumstantial."[8] (The court, in turn,

_____

[8] Toward the end of this section of his briefing before the Florida Supreme Court, Preston mentioned that "[t]he only direct evidence of intent" presented at trial was Preston's request that Scott go with him "to get some money." We do not read this statement to contradict Preston's earlier assertion, accepted by the Florida Supreme Court, that the evidence was "solely circumstantial." His statements were not direct evidence of his premeditation in the killing of

24

referred to this admission in its opinion. Preston I, 444 So. 2d at 943.) In response, the state observed that while Preston claimed the evidence was circumstantial, he made "no argument that it is insufficient because of any reasonable hypothesis of innocence advanced." That is, the state acknowledged the pertinent legal standard under Florida law, but noted that Preston never explained how the state failed to meet it. Preston then stated in his reply brief that, under Florida law, "'[w]here the only proof of guilt is circumstantial . . . a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence,'" quoting McArthur v. State, 351 So. 2d 972, 976 n.12 (Fla. 1977). We can safely assume that when the Florida Supreme Court considered Preston's appeal, it did so through the prism of this longstanding state doctrine, rather than federal law. The Florida Supreme Court had no opportunity to even consider federal law, because, as we've explained, Preston never once raised Jackson, the Jackson standard, any federal cases, the Due Process Clause or any other constitutional provisions, or, indeed, even referenced the word "federal" in his briefing on this claim.

Any federal claim that Preston could have brought would have been judged by a different standard than the state claim he actually did bring. This fact alone

Earline Walker, and, even if they were, Preston's conviction was still "predicated chiefly upon circumstantial evidence." Thorp, 777 So. 2d at 389.

25

renders this case substantially and meaningfully different from <u>Mulnix v. Secretary for the Department of Corrections</u>, 254 F. App'x 763, as well as from the cases from other circuits cited by Preston. In <u>Mulnix</u>, an unpublished opinion, a panel of this Court concluded that the petitioner had exhausted his federal sufficiency of the evidence claim by bringing an analogous claim under state law. <u>Id.</u> at 764. We concluded that "[his] state and federal claims were not merely similar," but "identical," because Florida would apply the <u>Jackson</u> standard in considering a state sufficiency of the evidence claim. <u>Id.</u> at 764-65. That may well be true as a general matter. But, as we've explained, a different rule applies under Florida law when a conviction is premised solely or chiefly on circumstantial evidence. Preston invoked and relied upon that rule before the Florida Supreme Court, and he cannot now gloss over this important dissimilarity between Florida law and federal law. This case is much closer to <u>Pearson v. Secretary, Department of Corrections</u>, where the petitioner advanced a sufficiency of the evidence claim based on the argument that "there was no evidence of reasonable fear on the part of the victim, as defined by state law." 273 F. App'x at 850. Like the petitioner in <u>Pearson</u>, Preston relied on a unique rule of state law, "cited exclusively to state cases, and all of his substantive arguments addressed Florida law." <u>Id.</u> Nothing in Preston's brief "would have alerted the state court to the presence of a federal claim about

26

due process." Id.  And, for that reason, Preston did not exhaust the federal claim he now seeks to raise.

Nor can we say that the Florida Supreme Court's decision denying relief as a matter of Florida law, which appears to be more defendant-friendly when it comes to circumstantial evidence, effectively served as a denial of federal relief as well. To the best of our knowledge, no court has said that a petitioner can exhaust a federal claim by bringing a similar state law claim governed by a less stringent legal standard.  We decline to adopt an approach which would force the federal courts to arbitrarily determine whether the federal standard is "easier" or "harder" to meet than the state standard in a given case.  Sometimes the standards will simply be different.  We think it far more straightforward to simply require that when petitioners intend to bring a federal claim, they say so, in words or substance. We also do not think that this requirement places a particularly onerous burden on state prisoners, who need only indicate to the state courts that they intend to raise a federal claim.

Preston's failure to exhaust means that his federal claim has been procedurally defaulted.  "A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default."  Lucas, 682 F.3d at 1353.  On appeal, Preston

has not made, or even attempted to make, such a showing.[9]  He therefore cannot obtain relief on his Jackson claim.

IV.

But, even if Preston had exhausted his Jackson claim, his claim would still fail on the merits.  We review de novo the district court's disposition of Preston's habeas petition.  Peterka v. McNeil, 532 F.3d 1199, 1200 (11th Cir. 2008).  The district court concluded that the weight of the evidence presented at Preston's trial "mandates the denial of [his] claim."  Preston, 2012 WL 1549529, at *13.  We agree.  After thorough review of the record, we are confident that the Florida Supreme Court did not unreasonably determine that a rational trier of fact could find Preston's decision to murder Earline Walker was undertaken with premeditated design.

The Due Process Clause "prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt."  Jackson, 443 U.S. at 309.  As the Supreme Court explained in Jackson, "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt

_____

[9] In his reply brief before the district court, Preston asserted merely that "[i]neffective assistance of trial and appellate counsel ha[s] been alleged" throughout, and that prejudice was shown by the fact that he was found guilty and sentenced to death.  This highly general showing does not establish cause and prejudice sufficient to excuse his default.  In any event, no such argument has been advanced in this Court.

28

has stated a federal constitutional claim." Id. at 321.  The Court, however, has

subsequently "made clear that Jackson claims face a high bar in federal habeas

proceedings because they are subject to two layers of judicial

deference."  Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam).  That

is:

> First, on direct appeal, it is the responsibility of the jury -- not the court -- to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.  And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was objectively unreasonable.

Id. (citations and quotations omitted).  "[T]he only question under Jackson is

whether [the jury's] finding was so insupportable as to fall below the threshold of

bare rationality," and the state court's determination that it was not "in turn is

entitled to considerable deference under AEDPA."  Id. at 2065.[10]

In assessing the sufficiency of the evidence, we ask whether "any rational

trier of fact could have found the essential elements of the crime beyond a

---

[10] Preston asserts both that the Florida Supreme Court's decision was "contrary to, or [involved] an unreasonable application of" clearly established federal law, and that it "was based on an unreasonable determination of the facts."  He does not, however, dispute any of the Florida Supreme Court's specific factual findings.  We construe his claim as an argument that the court unreasonably applied Jackson in determining that the state presented sufficient evidence of premeditation.  Either way, we must determine whether the Florida Supreme Court's decision was "objectively unreasonable."  Coleman, 132 S. Ct. at 2062.

reasonable doubt." Jackson, 443 U.S. at 319. Preston asserts that we must look to Florida's heightened burden of proof for cases involving circumstantial evidence, which "recognizes that the State has the burden in a circumstantial case to eliminate every reasonable hypothesis of innocence." As we've explained, however, the Florida rule and the federal rule are significantly different. Under Jackson, the prosecution does not have "an affirmative duty to rule out every hypothesis except that of guilt beyond a reasonable doubt." 443 U.S. at 326.[11] "When the record reflects facts that support conflicting inferences, there is a presumption that the jury resolved those conflicts in favor of the prosecution and against the defendant." Johnson v. Alabama, 256 F.3d 1156, 1172 (11th Cir. 2001). Florida's circumstantial evidence rule, therefore, "has no place in our sufficiency of the evidence analysis." Wilcox v. Ford, 813 F.2d 1140, 1145 n.7 (11th Cir. 1987).

We do, however, "look to state law for the substantive elements of the criminal offense." Coleman, 132 S. Ct. at 2064 (quotation omitted). Under

---

[11] In the past, we have indicated that

> [o]nly in a case where the failure to meet a higher state burden of proof raises independent constitutional concerns -- for example, a violation of due process through the arbitrary or discriminatory failure to apply a state procedural rule -- would a federal court on collateral review examine the evidence to determine whether the state had met its self-imposed burden.

Bishop v. Kelso, 914 F.2d 1468, 1473 (11th Cir. 1990) (footnote omitted). Preston has not attempted to make a showing that the state's failure was in some way arbitrary or discriminatory, nor could he.

Florida law, "[a] premeditated design to take the life of the person killed or any human being is an essential element of the crime of murder in the first degree." Forehand v. State, 171 So. 241, 242 (Fla. 1936). Premeditation is defined as "a fully formed conscious purpose to kill which may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act." Kocaker v. State, 119 So. 3d 1214, 1226 (Fla. 2013) (per curiam) (quotation omitted). Premeditation is a question of fact which can be established through circumstantial evidence, including "such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." Id. (quotation omitted)

Florida's high court rested its conclusion on three critical pieces of evidence: (1) the nature of the wounds inflicted upon Earline Walker's body; (2) the type of weapon used to inflict those wounds; and (3) Preston's statements in the hours before and after Walker was killed. To this ample evidence, we would add what the jury could, quite reasonably, infer: that Preston drove with Walker to a distant location -- an open field, over a mile and a half away -- before he ultimately undressed and then killed her, which is itself strongly suggestive of a premeditated design. The record, taken as a whole and in conjunction with reasonable

31

inferences that the jury could draw, was plainly sufficient to establish premeditation. We cannot say that the Florida Supreme Court's decision was erroneous, let alone that it was "objectively unreasonable."

The Florida Supreme Court first considered the wounds suffered by Earline Walker. The Florida courts have explained time and again that the nature of a victim's wounds is relevant to the question of premeditation. See, e.g., Kocaker v. State, 119 So. 3d at 1226; Miller v. State, 42 So. 3d 204, 228 (Fla. 2010) (per curiam); Perry v. State, 801 So. 2d 78, 85-86 (Fla. 2001) (per curiam). "Although multiple stab wounds alone do not prove premeditation, the nature and location of these wounds [may] support [a] finding of premeditation." Perry, 801 So. 2d at 85. For example, "the deliberate use of a knife to stab a victim multiple times in vital organs," including the chest and neck, "is evidence that can support a finding of premeditation." Id. at 85-86. And the fact that "[t]he force of the stabbing was great" can also support a finding of premeditation. Miller, 42 So. 3d at 228.

In this case, uncontested record evidence established that the "multiple stab wounds" sustained by Walker were "particularly brutal." Preston I, 444 So. 2d at 944. Most importantly, "[t]here was almost a complete severance of her neck, trachea, carotid arteries[,] and jugular vein." Id. Even assuming, as Preston stresses, that this killing blow -- the slash to the neck -- was inflicted from behind,

32

that fact undermines, rather than supports, his case.[12]  The jury could reasonably have thought that the evidence reflected an execution-style attack, meant to kill Walker before she could cry out for help.  The swift, brutal slash to Walker's neck alone is indicative of Preston's premeditated design to take her life.  But Preston continued to stab Walker, with at least one blow landing in her liver, which the jury could have viewed as an indication that he made a conscious decision to continue inflicting wounds to ensure that she would not survive the assault.

Two particular wounds that Preston inflicted upon Walker after she died also suggest premeditation.  First, her body was found with a cross mark deliberately cut into her forehead, a time-consuming act wholly consistent with premeditation.  Second, she suffered a puncture wound nearly eight centimeters long inside her vagina.  The jury could well have concluded that these particular injuries suggested a deliberate plan to kill Walker and then to physically mark her body.

The nature of the weapon used to kill Walker also supports the jury's finding of premeditation.  She was murdered with a four to five inch blade, rather than, for

---

[12] Preston relies on a Minnesota case, State v. Swain, which concluded that a series of blows, inflicted from behind, did not by itself suffice to establish premeditation.  269 N.W.2d 707, 713-14 (Minn. 1978).  That case is factually distinguishable because it involved a blunt strike to the back of the head, rather than a brutal slash to the throat, followed by multiple stab wounds to the rest of the body.  See id. at 710-11.  The latter clearly suggests a plan to kill in a way that hitting someone over the head does not.  But, even if Swain were on all fours with this case, it does not establish that the Florida Supreme Court's decision was contrary to or an unreasonable application of clearly established Supreme Court law.

example, a kitchen knife picked up in the heat of the moment.  We place less emphasis on this detail, because record evidence -- the testimony of Maxwell -- established that Preston habitually carried such a weapon.  If the jury credited her testimony, it would undermine a finding of premeditation, because it indicates that Preston did not necessarily acquire the weapon for the purpose of committing a murder.  But the jury could reasonably have discredited her testimony, particularly in light of Preston's own testimony that he carried only a small pen-knife after losing his buck knife in Georgia two years before the murder, or concluded that Preston carried the weapon in question on this particular night to aid in a violent crime.  Whether he carried the knife habitually or not, the deadliness of the weapon belies any assertion by Preston that he could not have known that his actions would result in the death of Walker.  In any event, the Florida Supreme Court could reasonably rely on the nature of the weapon in its calculus.

Preston's own statements on the eve of the murder also suggest premeditation.  Preston asked his brother, Scott, to go with him to the Parliament House because he "knew a way to get some money."  Scott refused to go with Preston, and Preston then left the home.  Preston returned to the home with some money at about 4:30 a.m.  When he returned, he was in an excited state and exclaimed, "All right. I did it."  While Scott and Maxwell helped Preston count the money, Preston explained that he got the money after he and a friend robbed "two

34

gay people" at the Parliament House.  Preston does not dispute that he made these

statements.  The jury reasonably could have inferred from this uncontroverted

record evidence that Preston set out that night planning to commit a robbery

through violent means.  He decided to rob the Li'l Champ convenience store, and

afterward, he killed Earline Walker.  Later, he attempted to cover up his crime by

concocting a story about robbing the Parliament House -- a robbery which,

according to uncontroverted testimony, never took place.  The Florida Supreme

Court's conclusion that a trier of fact could have viewed these statements as

indicative of premeditation was not objectively unreasonable.

Lastly, we note that the events leading up to Walker's murder also show

premeditation.  The essence of premeditation is design, and design is exactly what

Preston's actions reflect.  The jury could reasonably have inferred that after

Preston robbed the convenience store, he forced Walker, the only witness to the

robbery,[13] to lock the store and then leave with him.  The two drove roughly a mile

and a half away in Walker's car.  They parked, and Preston forced Walker to walk

several hundred feet into an open field, in the dead of night, and far from any

---

[13] Preston argues that the jury could not have inferred from the evidence presented at trial that he killed Walker to eliminate any potential witnesses to the robbery, because the first sentencing court expressly did not find the "avoiding arrest" aggravating factor. We do not see how the trial court's sentencing decision in any way affected the inferences the jury was permitted to draw during guilt-phase deliberations.  Moreover, the sentencing court after Preston's third penalty phase trial did find that aggravating factor, after the state introduced substantially the same testimony.

35

potential witnesses.  He forced her to disrobe.  And then he killed her, swiftly and brutally.  While the Florida Supreme Court did not discuss these inferences in the course of its premeditation analysis, the record before the jury strongly supported this version of events, and the jury was entitled to consider them in weighing the evidence of premeditation.  As the Supreme Court has instructed, "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision."  Richter, 562 U.S. at 102.  On these facts, we cannot say that no rational jury could have found premeditation, let alone that the Florida Supreme Court's conclusion to that effect was objectively unreasonable.

Preston disputes the jury's finding of premeditation on the ground that all of the evidence is consistent with an alternative theory: that he was under the influence of PCP on the night of the murder, and killed Walker in a frenzied attack.  According to Preston, this theory accounts for the multiple stab wounds on Walker's body, as well as Walker's apparent compliance with Preston's demands.  Preston's theory has little factual support, since no evidence was introduced at trial showing that he actually consumed PCP that night, aside from his own testimony.  Maxwell's testimony only established that Preston attempted to get his brother and Maxwell to help him consume some PCP, that he habitually took PCP, and that "[h]e appeared to be" on PCP when he returned, but Maxwell couldn't "say for sure because [she] really [didn't] know."  The remainder of the testimony at trial

36

centered on Preston's history of drug abuse and how his behavior on the night of January 9 could have been consistent with the usage of PCP or other drugs.

Leaving the lack of evidence to support his theory aside, Preston's argument, at best, presents a reasonable hypothesis of innocence consistent with the evidence adduced at trial.[14]  As we reiterate once more, we do not apply Florida's special burden of proof for cases involving circumstantial evidence, and the prosecution was under no obligation to exclude every hypothesis other than guilt.  Applying, instead, the rule stated in Jackson, a rational trier of fact could well have weighed the evidence and found that it showed premeditation, rather than a PCP-induced frenzied attack.

In sum, the nature of the wounds inflicted on Walker's body, the weapon used to inflict those wounds, the statements Preston made on the eve of the murder, and his decision (after robbing the convenience store) to take Walker to an open field over a mile and a half away before undressing and killing her all powerfully suggest premeditation.  We, therefore, hold that the Florida Supreme Court's conclusion that the state presented sufficient evidence of premeditation was not objectively unreasonable.

---

[14] As does counsel's suggestion at oral argument that Preston could have transported Walker to the field solely to commit a sex crime.

37

V.

The irony in this sad case is not lost on this Court.  To show exhaustion, Preston attempts to disavow any reliance on Florida's rule regarding circumstantial evidence, and asserts that his claim, from the very beginning, was predicated on <u>Jackson</u>.  Yet, on the merits, Preston turns once again to the more favorable principles of Florida's state law.  Preston's argument is unavailing because, in actuality, his claim has always been grounded in principles of state law.  He did not present his claim as a federal one before the state courts, and he is procedurally barred from now asserting it on habeas review.  But, even if we were to overlook that failure, Preston cannot meet the applicable federal standard, as stated in <u>Jackson</u>.  Thus, we affirm the denial of his federal habeas petition.

**AFFIRMED.**