[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10350

_____

D.C. Docket No. 9:19-cv-81254-WPD

ANTONIO SENDA WRANCHER,

Petitioner - Appellant,

versus

FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 7, 2021)

Before JORDAN, JILL PRYOR, and TJOFLAT, Circuit Judges.

PER CURIAM:

Antonio Wrancher is serving a life sentence in Florida for the first-degree murder of his former girlfriend. He appeals from the district court's denial of his *pro se* 28 U.S.C. § 2254 petition.[1]

We appointed counsel for Mr. Wrancher and granted a certificate of appealability on one issue: whether the state post-conviction court unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), in rejecting Mr. Wrancher's claim that his trial counsel rendered ineffective assistance by failing to impeach two prosecution witnesses, Diane Atkins and Lillian Knight, with their prior inconsistent statements to the police. *See Wrencher v. State*, 238 So. 3d 814, 815 (Fla. 4th DCA 2018).

After review of the record, and with the benefit of oral argument, we affirm the district court's denial of habeas relief to Mr. Wrancher.

**I**

In 2010, Cassandra Daley was Mr. Wrancher's girlfriend. That year, on the day before Thanksgiving, Ms. Daley ended her relationship with Mr. Wrancher after the two were seen arguing at Roy's, a club they frequently visited. When Ms. Daley left the club for the evening, Mr. Wrancher followed her, pushed her to the ground,

---

[1] We note that Mr. Wrancher has referred to himself as "Wrencher" in his *pro se* filings. For the sake of consistency with the underlying proceedings, we will use "Wrancher."

and attacked her with a knife, inflicting a total of 16 stab wounds and 23 slash wounds. Ms. Daley died from her injuries, and Florida charged Mr. Wrancher with first-degree murder with a deadly weapon.

The brief facts laid out above were largely undisputed at trial and remain so today. At trial Mr. Wrancher asserted that his attack against Ms. Daley was not a premeditated act of violence, but rather the result of an uncontrollable fit of rage. As a result, he claimed that he lacked the requisite premeditation for first-degree murder.

Over the course of the trial, the state offered the following evidence from which the jury could reasonably infer premeditation: (1) Artie Snead, Jr. testified that while at Roy's Mr. Wrancher stated, so that everyone could hear, that "[i]f he can't have her, nobody can have her" and "I'm going to kill her"; (2) Diane Atkins testified that while outside Roy's Mr. Wrancher stated that if he couldn't have Ms. Daley, nobody else could; (3) Lillian Knight testified that Mr. Wrancher followed her and Ms. Daley out of the bar, silently came up from behind, shoved Ms. Daley to the ground, straddled her, and began stabbing her before saying "I'm going to kill you, bitch"; (4) Dr. Reinhard Motte, an associate medical examiner, testified about the cause of death and the nature and manner of the wounds inflicted; and (5)

3

uncontested evidence that Mr. Wrancher had a knife with him when he confronted Ms. Daley.

The testimony of Mr. Snead, Ms. Atkins, and Ms. Knight all differed in important ways from their pretrial statements to the police, but Mr. Wrancher's attorney only tried to impeach Mr. Snead based on his prior inconsistent statements. Because they form the basis for the issue on appeal, we set out the inconsistent statements below.

In his statement to the police, Mr. Snead stated that Mr. Wrancher said that he would "do something to [Ms. Daley] before the night over with." At trial, however, Mr. Snead testified that Mr. Wrancher made the far more direct statement, "I'm going to kill her." In both versions, Mr. Snead insisted that this latter statement, as well as Mr. Wrancher's statement that if he couldn't have her, no one else could, occurred inside of Roy's.

Ms. Atkins initially told the police that she first saw Mr. Wrancher and Ms. Daley on the day of the murder after she entered Roy's, and specifically disavowed seeing either of them earlier in the day at a popular nearby hangout. Her statement to the police made clear that when Mr. Wrancher said, "[i]f I can't have you, nobody else could," he did so inside Roy's. But she was ambiguous as to whether she personally heard him say it or merely heard other people remark that he had said it:

4

Q. Mm-hmm

A. And he quote her in there saying, if I can't have you, nobody else could.

Q. How many times had he said that?

A. He said that to her, by my understanding, about five or six.

At trial, however, Ms. Atkins initially insisted that she never heard Mr. Wrancher say anything to Ms. Daley while they were inside Roy's. Upon further questioning, she responded that Mr. Wrancher said that he "didn't want nobody dancing with her." Only upon having her recollection refreshed with her written statement did Ms. Atkins testify that Mr. Wrancher said that if he couldn't have her, nobody else could. Even then, she insisted that Mr. Wrancher's statement had occurred outside Roy's, contradicting her earlier police statement both in relation to the location of Mr. Wrancher's statement and that she didn't see Mr. Wrancher or Ms. Daley until entering Roy's. Ms. Atkins' trial testimony was also inconsistent with Mr. Snead's testimony that the statement occurred inside Roy's.

The trial testimony of Ms. Knight also differed in several ways from her statement to the police. Ms. Knight told the police that Mr. Wrancher had followed her and Ms. Daley from the bar and declared, "Bitch, you ain't going no motherfucker where." Mr. Wrancher then pushed Ms. Knight out of the way and Ms. Daley to the ground. Mr. Wrancher climbed on top of Ms. Daley and began stabbing her. At this point Ms. Knight fled to try and get help and did not see or hear anything further.

At trial, Ms. Knight testified that Mr. Wrancher approached them from behind without a word before pushing Ms. Daley to the ground and stabbing her (what the prosecution would term an "ambush").  It was only then that Mr. Wrancher uttered the now more damaging statement, "I'm going to kill you, bitch."

## II

## A

We review *de novo* a district court's grant or denial of a habeas corpus petition.  *See Franks v. GDCP Warden*, 975 F.3d 1165, 1171 (11th Cir. 2020).  That is, we review *de novo* "the district court's decision about whether the state court acted contrary to clearly established federal law, unreasonably applied federal law, or made an unreasonable determination of fact."  *Reed v. Sec'y*, *Fla. Dep't of Corr*., 593 F.3d 1217, 1239 (11th Cir. 2010) (quotation marks omitted).

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), there is a "highly deferential standard for evaluating state-court rulings, and [it] demands that [state-court decisions] be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and quotation marks omitted).  After a state court has adjudicated a claim on the merits, a federal court may grant habeas relief only if the state court's decision was (1) contrary to, or

6

involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.  *See* 28 U.S.C. § 2254(d).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

**B**

The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel during criminal proceedings against them.  *See Strickland*, 466 U.S. at 684–85.  To prevail on a claim of ineffective assistance of counsel, a petitioner like Mr. Wrancher must demonstrate (1) that counsel's performance was deficient, *i.e.*, the performance fell below an objective standard of reasonableness; and (2) that he or she suffered prejudice as a result of that deficiency.  *See id.* at 690–91.

To establish deficient performance, Mr. Wrancher must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence.  *See id.* at 690.  Whether counsel's strategic or tactical decisions were reasonable enough to fall within the wide range of professional competence is an issue of law.  *See Franks*, 975 F.3d at 1176.  An attorney's actions

7

are sound trial strategy, and thus constitutionally effective, if a reasonable attorney could have taken the same actions. *See Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1243 (11th Cir. 2011). "[T]rials are a very messy way of telling a story— witnesses do not always say what the lawyer expects and cross-examination can quickly undermine what a witness was expected to contribute." Scott E. Sundby, *The Conundrum of Zealous Representation*, 8 Ohio St. J. Crim. L. 567, 571 (2011) (arguing that criminal trials "often resemble a Turkish bazaar in seeking a verdict amid the din and bustle of cross-examination and conflicting evidence and testimony"). As a result, "when counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

To establish prejudice, Mr. Wrancher "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" does not mean that counsel's performance "more likely than not altered the outcome." *Nix v. Whiteside*, 475 U.S. 157, 175 (1986). Instead, a "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

As noted, Mr. Wrancher's counsel chose not to highlight the inconsistencies between the trial testimony and police statements of Ms. Atkins and Ms. Knight. He

8

instead pursued alternate means of discrediting or lessening the impact of their testimony.

In the case of Ms. Atkins, counsel—after briefly pursuing whether she had actually heard Mr. Wrancher's statement—highlighted her close relationship with Ms. Daley and discussions with others. He did this to try to paint her memory as "shaped to fit the story that she believes happened." Counsel also brought out that Ms. Atkins had four felony convictions, was on probation at the time of the trial, and had sobriety issues.

For Ms. Knight, counsel emphasized her bizarre behavior on the stand. This included her interrupting the examination to complain that she was hungry and laughing and mumbling to herself. Counsel also brought Ms. Knight's mental disorder and her mixing of medication and alcohol to the jury's attention.

To resolve this appeal, we need only address the prejudice prong of *Strickland.* We conclude, as did the district court, that Mr. Wrancher cannot show that the state courts' resolution of the prejudice prong was unreasonable.[2]

---

[2] We doubt that counsel rendered ineffective assistance given that he sought to impeach Ms. Atkins and Ms. Knight on grounds that might potentially render all of their testimony (and not just their testimony about Mr. Wrancher's statements) suspect. But, again, we do not decide the matter of performance.

In Florida, first-degree murder is "[t]he unlawful killing of a human being" that is "perpetrated from a premeditated design to effect the death of the person killed." Fla. Stat. § 782.04(1)(a)(1). Under Florida law, premeditation is a fully-formed conscious purpose to kill which exists in the mind of the perpetrator for a sufficient length of time to permit reflection. *See Johnston v. State*, 863 So. 2d 271, 285 (Fla. 2003). Premeditation may be inferred from such evidence as "the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." *Id.* (quotation marks omitted). When a victim is deliberately stabbed with a knife several times in her vital organs, the manner of death can provide circumstantial evidence of premeditation. *See Jackson v. State*, 180 So. 3d 938, 956 (Fla. 2015); *Miller v. State*, 42 So. 3d 204, 228 (Fla. 2010).

In our view, Mr. Wrancher has failed to demonstrate that the state courts applied the prejudice prong of *Strickland* unreasonably. Simply put, he has not shown a reasonable probability of a different outcome on the issue of premeditation had counsel impeached Ms. Atkins and Ms. Knight with their pretrial statements to the police. First, Mr. Wrancher had a knife with him when he confronted Ms. Daley, and that is evidence of premeditation. Second, Mr. Snead testified that Mr. Wrancher said that he was going to kill Ms. Daley. Although Mr. Snead's pretrial

10

statement to the police—that Mr. Wrancher said he was going to do something to Ms. Daley before the night was over—was less damaging, it still pointed towards premeditation. Third, Ms. Knight told the police prior to trial that Mr. Wrancher had followed her and Ms. Daley from the bar, and said to Ms. Daley, "Bitch, you ain't going no motherfucker where." After making that statement, Mr. Wrancher pushed Ms. Knight out of the way and pushed Ms. Daley to the ground and began stabbing her. If the jury had heard and credited Ms. Knight's statement to the police instead of her trial testimony, that statement would still have supported a finding of premeditation. Following a victim with a knife in hand and telling her, with an expletive, that she is not going anywhere is strong evidence of premeditation when what follows is a vicious and brutal stabbing. That is particularly so when the stabbing follows the victim ending a relationship. Fourth, under Florida law the nature of the stabbing provided circumstantial evidence of premeditation. *See Jackson*, 180 So. 3d at 956; *Miller*, 42 So. 3d at 228. *See also Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 454 (11th Cir. 2015) (concluding, in a habeas case, that multiple brutal stab wounds constituted evidence of premeditation).

## III

For the reasons set forth above, we affirm the district court's denial of Mr. Wrancher's habeas corpus petition.

11

**AFFIRMED.**